MICHAEL KEAN *vs.* NEW YORK CENTRAL AND HUDSON RIVER
RAILROAD COMPANY.

Suffolk.   November 23, 1911. — January 2, 1912.

Present: HAMMOND, BRALEY, SHELDON, & DECOURCY, JJ.

*Contract,* Validity.  *Fraud.  Negligence,* Railroad.  *Evidence,* Of custom.  *Witness,*
Absent witness.  *Practice, Civil,* Conduct of trial: requests and rulings.

At the trial of an action of tort by an employee of a sleeping car company against
a railroad company to recover for injuries alleged to have been caused by negli-
gence of the employees of the defendant, a defense relied on was a contract by
the plaintiff to hold his employer harmless under a contract it had made with the
defendant to hold it harmless and indemnify it for any such liability.  The plain-
tiff, in order to prove that he was procured to sign such an agreement through
fraud of an official of his employer, testified that, when he first entered the em-
ploy of the sleeping car company, some four years before the injuries complained
of, after he had been working two hours, he was called into such official's office,
and the paper was passed to him for his signature; that upon his starting to read
it the official told him to lay it down, saying, "Sign your name to that.  It is
an application for work and that is all I have to say about it;" that when he
started to read it the official slapped it down on the desk and "told me to sign
my name to it and go back to work;" and that the plaintiff thought he " was
signing the application under which " he " was going to work." *Held,* that such
evidence entitled the plaintiff to go to the jury as to the question, whether the
signature to the document was procured by false representations and conceal-
ment of its contents and consequently was not binding on him.

At the trial of an action of tort by an employee of a sleeping car company against
a railroad company to recover for injuries alleged to have been caused by negli-
gence of the employees of the defendant in causing an engine with a baggage car
attached to it to be bumped violently into a car on the top of which the plaintiff
was at work, there was evidence tending to show that at the time of the accident
the plaintiff in the course of his duties was on the top of the car bending over
with his back in the direction from which the engine was approaching, that it
was customary for conductors of shifting crews to give warning to persons work-
ing on the tops of cars before an engine was backed against them for the purpose
of coupling to and moving them, and that on the occasion in question the plain-
tiff was not so warned and·did not know of the approach of the engine.  *Held,*
that the question, whether the plaintiff was in the exercise of due care, was for
the jury.

At the trial of an action of tort by an employee of a sleeping car company against
a railroad company to recover for personal injuries alleged to have been received
by the plaintiff by reason of an engine and baggage car being run violently
against a car on the top of which he was working in the course of his duties,
evidence is admissible to prove a custom of conductors of the defendant to give
warning to men working on the tops of cars of the fact that an engine was
about to be attached.

At the trial of an action a witness for the plaintiff was shown in cross-examination
a statement in writing, which he admitted bore his signature and which contained
a recital of facts at variance with his direct testimony. The witness denied any
knowledge of the contents of the statement. The defendant did not call the per-
son who procured the witness's signature to the statement, and in his closing ar-
gument to the jury the plaintiff's counsel commented thereon. At the close of
the charge the defendant asked the presiding judge to rule that " enough facts
do not appear in evidence to warrant the jury in drawing any inference unfa-
vorable to the defendant from the failure to produce as a witness the man who
wrote the statement " of the witness. The ruling was refused. *Held*, that the
ruling could not properly be made in the terms in which it was asked, because it
was for the jury and not for the judge to decide what if any inference should
be drawn, and against what party, from the failure to produce the person in
question to testify.

TORT for personal injuries received by the plaintiff on March
11, 1905, while in the employ of the Pullman Company and
at work upon one of its cars in the Exeter Street yard of the
defendant in Boston. Writ dated March 16, 1905.

In the Superior Court the case was tried before *White*, J.

It appeared that in January, 1901, at the time the plaintiff
entered the employ of the Pullman Company and also at the
time he received the injuries for which the action was brought,
a contract was in force between that corporation and the defend-
ant with regard to the furnishing of cars by the Pullman Company
to the defendant and the use and operation of them on the de-
fendant's trains, by the tenth section of which the Pullman Com-
pany agreed to fully indemnify the defendant against any and all
claims that might at any time be made by " employees of the Pull-
man Company, or of their representatives, on account of death,
personal injury or otherwise, howsoever occurring or sustained."

At the time he entered the employ of the Pullman Company,
the plaintiff signed a contract entitled, " Contract of Employ-
ment," by which he accepted employment by that corporation
upon certain " express terms, conditions and agreements," of
which there were six, covering one and one half pages of the
printed record. Those numbered fourth and fifth were as follows :

" Fourth : I assume all risks of accidents or casualties by rail-
way travel or otherwise, incident to such employment and service,
and hereby, for myself, my heirs, executors, administrators or
legal representatives, forever release, acquit and discharge The
Pullman Company, and its officers and employees, from any and
all claims for liability of any nature or character whatsoever, on

account of any personal injury or death to me in such employment of service.

" Fifth: I am aware that said The Pullman Company secures the operation of its cars upon lines of railroad,.and hence my opportunity for employment, by means of contracts wherein said The Pullman Company agrees to indemnify the corporations or persons owning or controlling such lines of railroad against liability on their part to the employees of said The Pullman Company in cases provided for in such contracts, and I do hereby ratify all such contracts made or to be made by said The Pullman Company and do agree to protect, indemnify and hold harmless said The Pullman Company with respect to any and all sums of money it may be compelled to pay, or liability it may be subject to, under any such contract, in consequence of any injury or death happening to me, and this agreement may be assigned to any such corporation or person and used in its defense."

The testimony regarding the circumstances under which the plaintiff signed the contract is described in the opinion.

The testimony of Joyce referred to in the opinion was as follows: " Q. On days before this accident, tell us what you observed the conductor do with reference to men on top of the trains before the engine would come down and back on ?   A. Well, he would come down and notify them, tell them to get off; that he was going to pull the car away."   That of Burke was as follows: " During the years that I have been there I always saw the conductor come and notify the men on top of the cars before the coupling was made until that time.   What I always saw done was that the conductor of the train came and notified whoever was on top or underneath working, said he was going to pull out the train, going to back the engine on to the train, or going to pull out some or back some."

Both Joyce and Burke, in their cross-examination, were shown statements in writing which they admitted were signed by them and which contained statements more or less contradictory to their direct testimony.   Each statement closed with the words, " I have read this and it is all right."   Both of them disavowed knowledge of the contents of the statements.

In his closing address to the jury the counsel for the plaintiff argued that inasmuch as Joyce and Burke had each denied that

he "had made the statement to the claim agent who wrote the body of the written statements, signed by them, and had asserted that they had never read the statements notwithstanding that it appeared in their handwriting upon the written instruments 'I have read the above and it is all right;' — that from the defendant's failure to produce the man who wrote the statements the jury ought to infer that if he were produced his testimony would not contradict Joyce and Burke on that point."

At the close of the charge, the defendant asked for the following additional ruling:

"12. Enough facts do not appear in evidence to warrant the jury in drawing any inference unfavorable to the defendant from the failure to produce as a witness the man who wrote the statements of Joyce and Burke."

Other facts are stated in the opinion.

The jury found for the plaintiff in the sum of $2,000; and the defendant alleged exceptions.

*H. F. Knight,* for the defendant.

*R. H. Sherman,* for the plaintiff.

DeCourcy, J. 1. The plaintiff's contract of employment with the Pullman Company enured to the benefit of the defendant; and the agreement to indemnify his employer contained therein constituted a defense to this action unless the plaintiff's signature was obtained fraudulently. This was taken for granted at the trial and the judge so instructed the jury. The evidence in favor of the plaintiff on this issue of fraud was, that after he had worked two hours he was called into the office of Ahearn the general foreman of the Pullman Company and the paper was passed to him for his signature. The plaintiff further testified as follows: "I picked it up to see what it was. 'Oh,' Ahearn says, 'lay it down.' 'Sign your name to that,' he said, 'it is an application for work and that is all I have to say about it.' He said the paper was only an application for work and nothing more. When I started to read it, he slapped it down on the desk, that I was supposed to sign my name to it. He told me to sign my name to it and go back to work. . . . I thought I was signing the application under which I was going to work." This evidence, although contradicted, entitled the plaintiff to go to the jury on his claim that the release was pro-

cured by fraudulent misrepresentations and concealment of its contents and consequently not binding upon him. *Bliss* v. *New York Central & Hudson River Railroad,* 160 Mass. 447. *Larsson* v. *Metropolitan Stock Exchange,* 200 Mass. 367.

2. There was evidence of the plaintiff's due care. The jury would be warranted in finding that he had just filled with water the rear tank on the forward car, and that when he was bending over to pull out the hose, an engine with a baggage car attached to it came from behind him and bumped violently against the car on the top of which he was standing; that no bell was rung or other signal given of the approach of the engine; that this train on which he was when injured usually arrived in Boston at half past three in the afternoon, and oftentimes was left standing on this main track over night, before being switched over on another track. There was evidence that it was customary for all conductors of switching crews to investigate whether any men were working on the tops of cars that were about to be moved, and to warn such men to get off, before giving the signal to couple on an engine. The plaintiff testified that before the day of this accident the conductor always notified him to get down when they were about to shift the car upon which he was working, and that no such warning was given at this time. He also testified that the ladder by which he mounted was standing at the forward end of the car, where the conductor presumably could see it. We cannot say, as matter of law, that the plaintiff was careless in not constantly interrupting his work to watch for the approach of an engine, and in relying upon the customary warning. *Meadowcroft* v. *New York, New Haven, & Hartford Railroad,* 193 Mass. 249. *Hines* v. *Stanley G. I. Electric Manuf. Co.* 199 Mass. 522.

3. The testimony of Joyce and Burke was rightly admitted. It tended to prove a custom to give warning to men who were working on top of cars, before a shifting engine was attached. *Rafferty* v. *Nawn,* 182 Mass. 503. *Hines* v. *Stanley G. I. Electric Manuf. Co., ubi supra.*

4. At the close of the charge the defendant requested the court to give the additional instruction numbered 12. In view of the plaintiff's argument something might well have been said to the jury on the subject of absent witnesses, but the instruction could not properly be given in the terms requested. It was for the jury

and not for the court to decide what if any inference should be drawn, and against which party, from the failure to produce as a witness the man who wrote the statements of the witnesses Joyce and Burke. *Harriman* v. *Reading & Lowell Street Railway*, 173 Mass. 28.

The foregoing disposes of all the questions raised by the defendant's exceptions and insisted upon in this court.

*Exceptions overruled.*