## DALY v. SAVAGE.

*Contracts — Remedies — Accounting or action at law — Partnership agreement or right of purchase.*

A, the owner of a business and stock of goods, wishing to sell the same and close up the business, entered into a contract with B, providing among other things that the purpose of A in making the contract with B was to have B ultimately succeed A and become the sole owner of the business. B was to take active management of the business at a fixed salary, account for all sales and money received and paid out, and, after paying expenses including a specified rate of interest to A on the inventoried value of the goods, to credit himself with the remainder of the proceeds, which were to be later turned over to A in payment of his debt. B had the option to purchase the entire stock at any time within six years on the payment of a fixed price, was not to be held liable for any losses, and had the right at any time to end the contract. They held themselves out to the public as a partnership doing business in the firm name of A & B, in order to secure the credit and standing of A. *Held:* As between the parties themselves such an agreement was not a partnership, but a contract giving B the right to purchase, and B is not entitled to an accounting, but his action, if any, is at law.

(Decided January 2, 1920.)

APPEAL: Court of Appeals for Clinton county.

*Mr. E. J. West* and *Mr. S. L. Gregory,* for plaintiff.

*Messrs. Smith, Rogers & Smith,* for defendant.

CUSHING, J. This case is heard on appeal. John B. Daly brought an action against Oscar B. Savage in the court of common pleas of Clinton county for an accounting. The petition set out a copy of what the parties termed a contract. It was not signed. They worked together for six years. Plain-

tiff claims that they were partners and that the paper writing was a contract of partnership.

The defendant claims in his answer that on and prior to August 1, 1910, the date of the contract, he was the owner of the stock of goods in question; that a friend of Daly's suggested to him that plaintiff desired to change his business and inquired if there was a way by which he could become associated with the defendant; and that defendant answered that he would not consider additional help on a salary, that he desired to dispose of the business, and that if an arrangement could be made to that end he would consider it. Subsequently, plaintiff and defendant had negotiations, when, it was claimed, Savage's position was stated to Daly, Daly replying that he was without capital and unable to make the purchase outright. After further negotiations, they reached an agreement for the sale of the business, and the so-called contract was prepared in furtherance of this understanding.

The record does not disclose any misunderstanding either as to the contract or the conduct of the parties until a short time before its expiration, July 31, 1916.

At the hearing on appeal each side objected to the introduction of evidence by the other to interpret the agreement, claiming that the contract speaks for itself and is clear.

The contract uses the language "the firm." When conducting the business they advertised and had stationery printed, designating themselves as partners. It was provided in the contract that the business should be carried on in the name of Savage & Daly, and that the indebtedness of the firm

should not exceed a stipulated amount. This was clearly a holding out that they were partners, and, as to third persons dealing with them, it would make them liable as partners.

This case is not here involving the rights of creditors, nor of third persons. The question is: What were their relations *inter se?*

Savage was the owner of the merchandise and business on August 1, 1910. The merchandise was inventoried and its value placed at $16,814.33. On that day Daly came into the business. Savage placed the business at the price fixed to his capital account. The agreement recited that he was to receive 4% interest on that sum, that a record of sales, purchases and moneys received and paid out should be kept; that inventories should be made at the end of each year; that after the payment of expenses, including interest, the profits, if any, were to be credited to Daly's capital account; and that Savage was to attend to specified work, for which he was to receive $4 per week, but was not to share in any of the profits. Daly was to devote his entire time to the business, take active management, and for the first year was to receive $12.50 per week. Each year thereafter, he was to receive per week an amount to be agreed upon. He was not to be charged nor held liable for any loss in the business, and, if such was shown by the inventory, he had the right at any time to end the contract.

Daly had the privilege, at any time within six years, on payment to Savage of the price fixed, $16,814.33, and interest from the date of the contract to the date of his election, to take over and become the owner of the entire stock and business.

Other provisions in the agreement relating to the conduct of the business need not be considered here.

The agreement used the following language which is important as throwing light on the intention of the parties as to what their relations to each other were:

"It shall be made plain in the contract that the purpose of A (Savage) in making this contract with B (Daly) is to have him, B (Daly), ultimately succeed A (Savage) and become the sole owner of the business."

This is clearly an expression of the intention of the parties at the time of entering into the contract. In law that intention should prevail. The parties proceeded on this theory for six years.

On July 27, 1916, three days before the expiration of the agreement, Savage notified Daly that at its expiration there would be due him under it for merchandise and the business $13,080, and for other charges under the agreement $425, making the total payments due him at that time $13,505.

A part of the same notice was an offer by Savage to Daly of an extension of time for six months for payment of the sum stated. Daly did not avail himself of this offer, nor did he tender the amount due under the contract as shown by the books.

We have examined the contract in question, aided by the suggestions of counsel. It was so inartistically and unskillfully prepared as to lend color to the conflicting views of both sides as to its nature and meaning. On the whole, however, we conclude and find that the predominant intention of the parties was that Daly was to have a continuing option to buy the business; that he was to have six

years within which to make the money out of the business or to raise it, and, on the payment to Savage of the price with interest, take over and own the same; and that the intention of the parties in advertising and conducting the business in the name of Savage & Daly was to secure to it the credit and standing that Savage had built up by his conduct of the business.

The mere fact that the parties called themselves partners is not conclusive in an action between them, where the ordinary indicia of partnership, mutual agency and the mutual sharing of profits and losses were absent. *Taplin* v. *Emery,* 14 C. C., N. S., 186, and *Johnson* v. *Miller,* 16 Ohio, 431.

By the terms of the agreement, Daly was not to be liable for any losses. At the expiration of the period, or at any other time, he had the right to abandon the enterprise. Savage was not his agent in the conduct of the business.

Counsel for defendant cite *Harvey* v. *Childs & Potter,* 28 Ohio St., 319, as settling the law of Ohio as to the elements necessary in determining the question of partnership. In that case Harvey sold goods to Potter, and it was sought to hold Childs for the amount of the purchase. It was not a question of partnership *inter se.* It was adjudicating the rights of third persons. In this and the other cases cited by counsel the decisions correctly state the law, but are not applicable to this case.

The contract does not give Daly any interest in the business. The profits, if any, were to be retained or turned over to Savage in payment of his debt. It was a contract to give Daly the privilege

of acquiring the business at the price, within the time, and on the conditions stated therein.

Plaintiff claims that even if it is not a contract of partnership that nevertheless Daly is entitled to an accounting in equity. This, no doubt, is based on the difference between the invoice price of the goods, $16,814.33, and the amount to become due at the expiration of the contract stated by Savage in his notice to Daly, $13,505, a difference of $3,-309.33. This sum, no doubt, would have been Daly's had he complied with his contract. If it be considered that this was a partial payment to Savage, it was paid out of the business, and could not be said to be Daly's unless he completed the contract and paid Savage the amount due him.

It is further claimed that Daly did not receive the increased compensation for the second, third, fourth and fifth years that the contract called for. If it became Savage's duty to fix this amount, or if the parties were to agree upon it and Savage breached the contract, it would be an action at law and not in equity.

In *Complete Building Show Co.* v. *Albertson,* 99 Ohio St., 11, the second proposition of the syllabus is:

"An action for the recovery of money as a debt or as damages is essentially an action at law and, where no fiduciary or trust relation exists between the parties, cannot be converted into a suit in chancery for an accounting by averments that facts relative to plaintiff's claim and the extent of his damages are not known to plaintiff but are within the knowledge of the defendant."

Sections 11551 to 11555, General Code, provide for recovery in an action at law when defendant has in his possession the information desired.

Our conclusion is that as between themselves there was not a partnership; that Daly is not entitled to an accounting; and that his action, if any, is at law.

A decree for defendant will be entered.

*Decree for defendant.*

SHOHL, P. J., and HAMILTON, JJ., concur.