## THE TEXAS CO. *v.* THE SEABOARD NATIONAL BANK, EXR.

*Corporations—Debts guaranteed by president purchasing assets from receiver and organizing new company—Old corporation creditor's forbearance from interfering with new company, sufficient consideration—President's promise to pay insolvent corporation's debts, not within statute of frauds.*

1. Where, on the insolvency of one corporation, the president, a principal stockholder, organized a new corporation, and bought the assets of the old corporation from the receiver, *held* that an old corporation creditor's forbearance from interfering with the new corporation was consideration for such president's guaranteeing payment of old corporation's debts.

2. Where a corporation became insolvent, and the president, a chief stockholder, purchased the assets from the receiver, and organized a new corporation, the president's promise to pay the debts of the insolvent corporation *held* not within the statute of frauds, as "promise to answer for debt of another," since the primary object of such promise was to subserve his own interest in the assets.

(Decided May 10, 1926.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Squire, Sanders & Dempsey* and *Mr. Frank Harrison,* for plaintiff in error.
*Messrs. Wilkin, Cross & Daoust* and *Mr. Quay H. Findley,* for defendant in error.

YOUNG, J. Error is prosecuted to this court to reverse a judgment of the common pleas court of Cuyahoga county. A jury having been waived, the case was tried to the court, and a judgment ren-

dered in favor of the defendant. The plaintiff company had sold and delivered merchandise to the Wilberite Roofing Company, of which one C. Fisher Hepburn was a large bondholder, a principal stockholder, and president of the company. The company became insolvent, and a receiver was appointed to close up its affairs. Hepburn bought the assets of the company at the receiver's sale, organized the Hepburn Company, and turned over the purchased assets to the newly organized company. Pending negotiations for the adjustment of the claim of the plaintiff company, Hepburn died, and suit was instituted by the plaintiff against the executor, the defendant herein, to recover the balance of the claim, amounting to $2,380.81, with interest. Plaintiff avers in its amended petition that Hepburn, during his lifetime, guaranteed and personally agreed in writing to pay said claim. The answer admits the amount of plaintiff's claim, but sets up two defenses; namely, that there is no consideration for the promise, and that, if a promise was made, it was for the payment of the debt of another, the Wilberite Roofing Company, and comes within the statute of frauds. The record shows that the assets of the Wilberite Company were sold by the receiver on July 2, 1923, and that, on July 9, 1923, the sale was confirmed.

Kershaw, agent of the plaintiff company, testified that on July 7th he had a telephone conversation with Hepburn, in which Hepburn stated that he had previously assured their Mr. Widger that he would personally guarantee the Texas Company account, and said:

"That guaranty still stands. I will guarantee the Texas account."

To which Kershaw says he replied:

"What I want is a written guaranty; the same as I understand the banks hold."

Kershaw then further testified:

"I explained that I was leaving that day on the Century for New York, and I expected him to meet the train when I came into the station here at Cleveland and give me a letter guaranteeing; nothing else would suit me. Well, he explained that he couldn't write such a letter as that. He intimated or stated that he couldn't write a letter of that kind, naturally, without consulting with his attorneys, and that he just couldn't do it, and he said, 'We will send the letter down to you. We will give you the letter, but I can't meet the train when you come through and give you a letter. That is out of the question.' And talked some more along about the same line, and he, of course, having formerly been connected with our company, referred to the attorneys of the company as 'those lawyer boys down at 17 Battery place.' 'Now,' he said, 'you keep those lawyer boys at 17 Battery place away from this proposition. This is mine, and you will get your money. I will guarantee that you will get your money.' That was the conversation that I had with Hepburn. I finally told him all right, I would take his word for it that the letter would follow, and let it go, and would not further insist on his meeting the train."

This testimony of Kershaw is corroborated by testimony of other witnesses for the plaintiff company.

On July 23, 1923, Hepburn sent all the creditors of the Wilberite Company, including the plaintiff

herein, a circular letter signed by himself personally, which includes the following paragraph:

"The receiver has not yet been able to determine the exact amount of his dividend, but the writer personally guarantees that all creditors will receive one hundred cents on the dollar."

It is urged by the defendant that there was no consideration for the promise made by Hepburn. The evidence shows that Hepburn made these promises on condition that the plaintiff company would not interfere with the confirmation of the sale of the assets of the Wilberite Company. From the nature of the transaction it is clear that Hepburn was attempting to protect himself against any action that might be taken on the part of the plaintiff, and that, by the forbearance of the plaintiff company in interfering with the new company, Hepburn received benefits which inured to himself. The evidence shows that, because of the promises made by Hepburn, that he would not only guarantee the payment of plaintiff's account, but that the claim would be paid in full and 100 cents on the dollar, the plaintiff company did not oppose the confirmation. Neither did it appeal from the confirmation of the sale. The record also shows that, after the letter of July 23, 1923, the Hepburn Company paid $5,000 on plaintiff's account, which reduced it to the amount sued for. Of course, it is contended by the defendant in error that this $5,000 was not paid by Hepburn personally, but, inasmuch as the Hepburn Company was not indebted to the plaintiff company, it must be conceded that it was to apply on the indebtedness of the Wilberite Company in accordance with the promise made by Hepburn to the plaintiff company. We think, from all

the evidence in the case, there was a consideration for the promise made by Hepburn.

It is further urged that, if this was a promise, it was within the statute of frauds, because it was the promise to pay the debt of another, and that the writing signed by Hepburn is not sufficient and of such character as to take it out of the statute. By the promise made on the part of Hepburn his own interests were primarily subserved, and from it he received benefits.

It has been held:

"When the leading object of the promisor is, not to answer for another, but to subserve some pecuniary or business purpose of his own, involving a benefit to himself, or damage to the other contracting party, his promise is not within the statute of frauds, although it may be in form a promise to pay the debt of another and its performance may incidentally have the effect of extinguishing that liability." *Crawford* v. *Edison,* 45 Ohio St., 239, 13 N. E., 80.

"Where a promise to pay an existing debt of another is made on the new and original consideration of benefit or harm moving between newly contracting parties, it is not within the statute." *American Wholesale Co.* v. *Mauldin,* 128 S. C., 241.

Many cases could be cited bearing out the same principle, but we deem it unnecessary in the determination of the instant case.

Our attention has been called to the allegations of the petition on the question of guaranty. We are of the opinion that, under a liberal construction of pleadings, the apparent inconsistency is not of such magnitude as to militate against, or prove

fatal to, plaintiff's claim. The testimony bears out the facts as contended by the plaintiff company.

For the reasons above given, the judgment will be reversed, and the cause remanded for new trial.

*Judgment reversed and cause remanded.*

RICHARDS and WILLIAMS, JJ., concur.

Judges of the Sixth Appellate District sitting in place of Judges LEVINE, SULLIVAN and VICKERY, of the Eighth Appellate District.