INDUSTRIAL BANKERS OF MASSACHUSETTS, INC. *vs.* REID, MURDOCH & CO.

Middlesex. March 3, 1937. — March 30, 1937.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Mortgage*, Of personal property: recording, attachment of mortgaged property. *Statute*, Revision. *Estoppel. Damages*, For tort. *Words*, "Principally transacts his business."

The omission, in the revision of R. L. c. 198, § 1, by G. L. c. 255, § 1, of the words, "or follows his trade or calling," indicated a legislative intent to change the provision and not a mere condensation of the phrase previously employed.

A mortgage of personal property recorded only in a city where the mortgagor lived with his wife except for a part of each week when he boarded in a town where he was steadily employed as a "meat cutter," was properly recorded under G. L. (Ter. Ed.) c. 255, § 1.

A mortgagee of personal property was not estopped to rely on a demand in writing made by his attorney on an attaching creditor under G. L. (Ter. Ed.) c. 223, § 75, by reason of the fact that a manager of his business, not comprehending the situation, disavowed the demand, as no act or omission resulted from the disavowal which was detrimental to the attaching creditor.

The full value of a mortgaged automobile at the time of its conversion by a constable on behalf of an attaching creditor of the mortgagor who refused to heed a demand by the mortgagee under G. L. (Ter. Ed.) c. 223, § 75, and not merely the balance due the mortgagee, was the proper measure of damages for the conversion.

TORT.   Writ in the First District Court of Eastern Middlesex dated November 6, 1935.

There was a finding by *Brooks*, J., "that the value of the car at the time of the conversion was" $115, and damages were assessed in that amount.   A report to the Appellate Division for the Northern District was ordered dismissed. The defendant appealed.

*H. Torf*, (*H. J. Barrett* with him,) for the defendant.

*D. B. Jefferson* & *W. Herbits*, for the plaintiff, submitted a brief.

PIERCE, J.   This is an action of tort for the conversion of an automobile, and is before this court on the appeal of the defendant from the final decision of the Appellate Division for the Northern District.

The trial judge found as follows: On May 21, 1935, the plaintiff lent $100 to Cyril E. Harper, secured by a chattel mortgage on an automobile belonging to Harper.   In his application for the loan, dated May 19, 1935, Harper gave his residence as "Everett," and his occupation as "meat cutter" employed by the First National Stores Inc., "Belmont," for about one year.   The mortgage was recorded with the city clerk's office in Everett, on May 27, 1935. It was not recorded in Belmont.   Harper was steadily employed as a meat cutter for the First National Stores Inc. in Belmont during the period from May, 1934, to November, 1935.   He boarded part of the week in Belmont, paying $3 or $4 therefor.   In his application for registration of the automobile in question, dated April 29, 1935, and in his application for a renewal of his operator's license, dated August 1, 1935, Belmont was given as his residence.   He hired a tenement in Everett, where his wife lived and where he lived when he was not in Belmont.   Everett was the residential address he gave and Belmont his place of employment when he mortgaged the automobile.

On September 21, 1935, one Haag, a constable in the town of Belmont, attached Harper's automobile "under a writ of contract" in which the defendant in the present case was plaintiff and Harper defendant.   At the time the constable seized the automobile Harper told him that it

was subject to a mortgage, but did not state where the mortgage was recorded. Prior to making the attachment Haag had assumed that Harper lived in Belmont, and in searching the records had found no mortgage of Harper recorded. Harper's attorney, one Mr. Herbits, received verbal authority from the plaintiff on September 21, 1935, after the seizure of the automobile by the constable, to represent it in a suitable action to procure release of the attachment, and on September 21 or 22 he communicated with Haag and was referred by him to his attorney, Mr. Torf. Mr. Herbits notified Haag and Mr. Torf of the mortgage in detail, and they refused to release the attachment.

On September 23, 1935, Mr. Herbits instructed an attorney, one Hyman Addis, who worked with him, to send a written demand for the automobile. Mr. Addis did this by letters dated September 23, 1935, addressed to Percival J. Haag, constable, and Hyman J. Torf, attorney for Reid, Murdoch & Co., on the letterhead of Addis and Isenberg, counsellors at law. These letters were in duplicate except as to the name of the addressee, and were signed "Industrial Bankers of Malden Hyman Addis By his attorney." Omitting the letterhead and signature each letter read: "Re: Reid, Murdoch & Co. *vs.* Cyril E. Harper Dear Sir: Please take notice that the Industrial Bankers of Malden is the mortgagor [*sic*] named in a certain mortgage given by Cyril E. Harper of Everett, Mass., dated May 21, 1935, and recorded with the records of personal property mortgages City Clerk's Office in the City of Everett, Book 96, Page 227. Said mortgage is in the sum of $100.00 on which there is a balance now due of $70.00 plus $1.75 interest. Said mortgage covers the 1931 Oldsmobile Sedan held under attachment by you in the above-entitled action. I hereby make demand upon you to release said attachment or pay forthwith the amount due the mortgagee on said mortgage. This notice and demand is given you in accordance with Chapter 223, Section 75, General Laws of the Commonwealth of Massachusetts. Whereof fail not or I shall hold you responsible for all damages resulting from your failure to comply with the provisions of the said

Chapter 223, Section 75, General Laws." Upon receipt of the letter, Mr. Torf telephoned the Malden branch office of the plaintiff and asked one King, its manager, if the plaintiff was making a demand as stated in the letters signed by Mr. Addis. In reply, King told Mr. Torf that the "Industrial Bankers of Massachusetts, Inc., was making no demand because the account was in good standing and he did not know an attorney by the name of Addis." Mr. Torf asked King 'to confirm this conversation by letter, and, under date of September 24, 1935, Mr. Torf received a letter which, omitting the letterhead of the plaintiff and the address of Mr. Torf, reads as follows: "Dear Sir: Confirming our telephone conversation of this afternoon, we wish to advise that Industrial Bankers of Mass., Inc. (Malden Branch) has made no demand on the property of Cyril Harper on which we have a mortgage, since there has been no default in the conditions of said mortgage. Further, we have engaged no Attorney by the name of Hyman Addis. This Company's counsel is Hale & Dorr, 60 State Street, Boston, Mass. Very truly yours, (Signed) Wm. W. King . . . Manager." After the above conversation and letters of September 23 and 24, 1935, Haag continued refusing to recognize Mr. Herbits's authority to demand a release of the attachment. Thereupon Mr. Herbits procured written authority from the plaintiff and sent a copy thereof to Haag on October 24, 1935. "Haag still declined to release the property and a few days later sold Harper's interest in it at public auction to Torf for $20."

The report of the trial judge contains the following statement of fact and his rulings thereon: "It is the defendant's contention that the mortgage was invalid because it should have been recorded in Belmont where the mortgagor resided and 'principally transacts his business' and also because the letter of the plaintiff denying the authority of Addis had invalidated Addis's demand, which was the only proper demand ever made. The defendant also contends that damage in any event is not the value of the property at the time of conversion but the balance due on the note. I find that the mortgage was properly recorded. The . . .

[mortgagor] resided in Everett. I do not believe that the statutory phrase 'principally transacts his business' [G. L. (Ter. Ed.) c. 255, § 1] refers to such employment [meat cutter] as Harper was engaged in, in Belmont. I find further that the plaintiff's demand of September 23 [1935] through Addis was not, under the circumstances, vitiated by the manager's letter of September 24 to Haag [Mr. Torf]. While the letter was inaccurate and the manager failed to grasp the situation at the moment, Haag was not materially, nor for long, misled."

The defendant seasonably presented twenty-five requests for rulings; many of them were requests for findings of fact which the judge was not obliged to give. *Castano* v. *Leone*, 278 Mass. 429. Others become immaterial to the issues now relied upon by the defendant, because of the special findings, above quoted, by the trial judge.

The request for a ruling that the words "principally transacts his business" as stated in G. L. (Ter. Ed.) c. 255, § 1, include "trade, calling, regular occupation, work and employment" was denied rightly. G. L. (Ter. Ed.) c. 255, § 1, provides in part as follows: "Mortgages of personal property shall, within fifteen days from the date written in the mortgage, be recorded on the records of the town where the mortgagor resides when the mortgage is made, and on the records of the town where he then principally transacts his business." The words "or follows his trade or calling" first appear in St. 1843, c. 72, § 2. This statute reads: "Every mortgage of personal property, whenever the mortgagor shall retain the possession thereof, shall be recorded as well by the clerk of the town where the mortgagor resides, as by the clerk of the town in which he principally transacts his business, or follows his trade or calling." These words were retained intact in Gen. Sts. c. 151, § 1; in Pub. Sts. c. 192, § 1; in St. 1883, c. 73; in R. L. c. 198, § 1; and in St. 1915, c. 226, § 1; and were omitted in G. L. c. 255, § 1, in its revision of R. L. c. 198, § 1. See G. L. c. 284. St. 1921, c. 233, amended said c. 255, § 1, but did not change the provision thus amended: thus is plainly indicated a legislative intent to change R. L. c. 198,

§ 1, and not to effect a mere condensation of the phrase "in which he [the mortgagor] then principally transacts his business or follows his trade or calling." *Hanley* v. *Eastern Steamship Corp.* 221 Mass. 125, 131.

It is plain that the demand signed by Mr. Addis on behalf of the plaintiff was sufficient in form and substance to satisfy the provision of G. L. (Ter. Ed.) c. 223, § 75.

It is contended by the defendant that the plaintiff is estopped, by reason of the conversation respecting the letter of September 23 with the defendant's attorney, and by its letter to the attorney on September 24, to rely on the demand by Mr. Addis in order to maintain the action. "The essential factors giving rise to an estoppel are . . . (1.) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2.) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made. (3.) Detriment to such person as a consequence of the act or omission." *Greenwood* v. *Martins Bank, Ltd.* [1933] A. C. 51, 57, cited with approval in *Cleaveland* v. *Malden Savings Bank*, 291 Mass. 295, 297–298. No action was taken by the defendant relying on the letter of September 24, 1935, signed by the plaintiff's manager. The attachment had then been made. If the defendant's attorney was in doubt of the authority of Mr. Addis to sign the demand, that doubt should have been dissipated when Haag seized the automobile on execution on October 26, 1935, and sold it five days later, for on October 24, 1935, written authority for Mr. Herbits, the employer of Mr. Addis, to act for the plaintiff was furnished to Haag. It follows that there was no "act or omission" resulting from the letter referred to which could be said to have been detrimental to the defendant, and the trial judge found as a fact that Haag (the constable) "was not materially, nor for long, misled."

Oral evidence was properly admitted to show the authority of Messrs. Herbits and Addis to act for the plaintiff. *Shaw* v. *Nudd*, 8 Pick. 9. *Record* v. *Littlefield*, 218 Mass.

483, 485. *Duncklee* v. *Webber*, 151 Mass. 408, 411. The subsequent adoption of the demand made by Mr. Addis in the name of the plaintiff was sufficient even if Mr. Herbits had no previous authority to employ Mr. Addis, who worked for him, to make the demand in the name of the plaintiff. *Merritt* v. *Clason*, 12 Johns. 102. Upon all the evidence, the authority or the absence of authority of Mr. Addis or Mr. Herbits to make the demand for a release of the attachment was a question of fact, with evidence to support the finding that there was such authority.

The measure of damages in the instant case was the full value of the property at the time of the demand for the release and of the refusal to release. *Hanly* v. *Davis*, 166 Mass. 1, 2, 3.

*Order dismissing report affirmed.*