**PORTER v. REID et al.**

Civil Action No. 5837.

United States District Court
D. Massachusetts.

June 17, 1948.

Charles D. Brown and M. James Zelman, both of Boston, Mass., for plaintiff.

Robert H. Hopkins, Paul V. Power, Richard N. Bail, and Gaston, Snow, Rice & Boyd, all of Boston, Mass., for defendant Lisle M. Buckingham.

John N. Worcester, Foster E. Allison, and Sullivan & Worcester, all of Boston, Mass., and Howard C. Walker, of Akron, Ohio, for defendant Lester R. Reid.

Edmund Burroughs, of Akron, Ohio, for defendant Lisle M. Buckingham.

FORD, District Judge.

On June 6, 1946, Curtis Porter filed a bill in equity in the Superior Court of Massachusetts for Suffolk County against Lester R. Reid, of Akron, Ohio; against Lisle M. Buckingham, of Akron, Ohio in his capacity as executor under the will of Paul L. Arnold; and against Harold A. Leventhal, of Boston, Massachusetts, as the stakeholder of funds claimed by plaintiff and the two principal defendants. Leventhal was temporarily restrained from paying over any of the money to Reid or Buckingham until further order of the Massachusetts court. Buckingham qualified in Massachusetts as executor of Arnold. The principal defendants removed the case to this court on diversity grounds, and appeared generally to contest the cause. Leventhal, being only a fundholder with no interest in the case, can be disregarded for diversity of citizenship purposes. Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628, 31 A.L.R. 867.

## I.

### Background of the Case.

From 1937 to 1944 Reid and Arnold conducted a trucking business under an Interstate Commerce Commission license. The base of operations for the business was at Akron, and the business operated trucks to Boston. There were terminals at Akron, Ohio, and Watertown, Massachusetts, owned by Reid and Arnold in some sort of co-ownership, and leased to Reid Brothers Express, Inc., which operated the business. The trucks and other heavy equipment were similarly owned and leased to the corporation. Reid and Arnold each owned one-half of the stock of Reid Brothers Express, Inc., amounting to 100 shares apiece.

Curtis Porter was an employee of the business at the Watertown terminal, where he performed the duties of manager from 1937. Thereafter, he was at times an owner-operator, an arrangement by which he bought trucks and leased them to the corporation, serving as a truckdriver himself.

Toward 1944, he began working at the Akron terminal as a dispatcher.

Arnold went into the military service in 1942 and left the business to be operated by Reid. He resumed activity with the business in the Spring of 1944, as president; Reid was secretary and treasurer.

In June and July, Reid negotiated for the sale of his interest in the business to Porter, and an agreement was consummated sometime in July but dated July 1, 1944. The Sale Agreement recited that Reid owned one-half the capital stock of Reid Brothers Express, Inc., an undivided one-half interest in the Akron and Watertown real estate and in certain trucks, tractors, equipment, notes and various miscellaneous appliances used in the trucking business; that Reid desired to sell all his right, title and interest in the above; and that he "does hereby sell to the buyer and the buyer does hereby purchase from the seller all of the seller's interest in said property" for $75,000. The terms were as follows: $2,000 in cash, $73,000 represented by a non-negotiable purchase money note at 4% per annum computed semi-annually and payable in installments of $1,000 per month, but if conditions in the trucking business should be such that Porter could not meet the required payments, then upon condition that Porter should not draw more than $75 per week for his services from the whole business, Reid would agree to a reduction of payments to $400 per month. Upon default in payment by Porter, the balance of the note would become due immediately. It was further agreed that Reid should transfer to Porter his stock in Reid Brothers Express, Inc., and that Porter should endorse it back to Reid as security on the note; that Reid should execute deeds for an undivided one-half interest in the Akron and Watertown terminals, and that Porter mortgage to Reid his interest thereby acquired, the Akron mortgage to be released by Reid upon payment to him of $12,500 and the Watertown mortgage to be released upon payment of $17,500. It was also agreed that title to the trucks, tractors, and trailers jointly owned by Reid with Arnold should not be transferred till April 1, 1945, but that Porter should have the right to

operate the equipment with Arnold; and upon transfer of Reid's title to the trucks, tractors, and trailers, any proceeds from the sale or disposition thereof should be placed in special bank accounts and used only for the purchase of new equipment.

Porter also agreed to transfer a certain equipment note he held against other persons with a balance due of $3,000 as further security for the payment of the $73,000 note, Porter to guarantee payment of the $3,000 note.

The Sale Agreement was signed sometime in July by Reid and Porter at the law offices of Buckingham, Doolittle and Burroughs, in Akron. The $2,000 cash payment was made; the $3,000 equipment note was endorsed to Reid; and Porter signed the $73,000 purchase money note. Reid transferred his 100 shares of stock and Porter endorsed them back. Reid delivered deeds to his one-half interest in the Akron and Watertown real estate; Porter executed mortgages on the two pieces of real estate, the mortgage on the Watertown property purporting to convey to Reid the whole Watertown property rather than an undivided one-half interest. Reid also delivered a letter to Porter which reduced the monthly payments to $400 in accordance with the terms of the Sale Agreement.

Arnold did not sign the Sale Agreement or assent in writing to any of the arrangements. However, it is fairly inferable that he knew of the negotiations which led up to the sale, that he knew of the sale, and that he assented to the arrangement. In fact, the evidence shows that he worked with Porter in the business after Reid stepped out, and that the set-up, with Porter in place of Reid, was satisfactory to him.

Porter and Arnold operated the business after consummation of the sale, and Porter made regular payments on the note. They transferred all of their personal interest in the trucks, trailers, and tractors to the corporation sometime before April 1, 1945, and set up a credit of $40,000 to themselves on the corporation books. Later, Arnold was killed in a robbery, Buckingham was named executor under his will, and Porter continued to operate the business. For reasons which do not appear on the record, the business suddenly collapsed in the Fall of 1945, and Porter ceased making payments. Edmund Burroughs of the law firm of Buckingham, Doolittle and Burroughs was appointed receiver of the corporation.

Thereafter, by agreement of Buckingham, Reid and Porter, the Akron real estate was sold, and $12,158.25, being one-half the proceeds, was applied to the debt of Porter to Reid on May 28, 1946.

On November 27, 1945, Buckingham and Porter agreed to sell the Watertown property to Sarah Mogul for $27,500, $1000 of which was paid on that date to be held in escrow by Edmund Burroughs. Subsequently, Buckingham as executor conveyed his one-half interest to Mogul by quitclaim deed; Porter conveyed his one-half interest to Mogul by quitclaim deed; and Reid released his mortgage and executed a quitclaim deed on the property to Mogul. The sum of $26,500 less various expenses was paid to Harold A. Leventhal, of Boston, Massachusetts, who was apparently acting in behalf of all parties to the transaction. At this juncture, Porter instituted his action in the Massachusetts courts, and secured an order there restraining Leventhal from paying out the money until the rights therein should be adjudicated.

## II.

### Pleadings.

Plaintiff, in his complaint, alleges that the contract of sale here in issue was induced by the false and fraudulent representations of Reid and Arnold; that they represented that the corporation was solvent when in fact it was insolvent; that they represented the property sold to be worth much more than it was worth; that Reid promised to pay the outstanding accounts payable of the corporation at the time of the sale, and that he did not do so. The complaint also contains an allegation that Reid did not in fact own the one-half interests in the Akron and Watertown real estate which he purported to convey to Porter. Plaintiff further alleges payment by him on the note in the amount of $8800, and asks that the transaction be set aside, the note cancelled, and that he be restored,

out of the funds held by Leventhal, to his position before the transaction took place.

Defendant Reid answered denying the allegations of fraud; denying that he had no title to the realty sold and asserting that the only defect in his title was in any event cured by the conveyance to Mogul, in which all parties joined; setting up the statute of frauds as a defense to any action based on a promise by him to pay the accounts payable of the corporation. Reid also counterclaimed for a judgment on the balance due on the $73,000 note, and demanded that Leventhal be required to pay over to him one-half the proceeds of the sale of the Watertown real estate in conformity with the provisions of the Sale Agreement.

Answering the counterclaim, Porter reiterated as a defense thereto his allegations of fraud and failure of consideration; and, as a defense to Reid's claim that the conveyance to Mogul cured any defect of title, Porter added that he was "ignorant of the law relative to the rights of a surviving partner" and consented to the sale because he thought he would get part of the proceeds, while Buckingham, knowing the law, did not advise him of the rights of a surviving partner.

Defendant Buckingham denied the allegations of the complaint generally, and counterclaimed for a declaratory judgment that Porter is not entitled to any funds in the hands of Buckingham or Leventhal, nor to an accounting from Buckingham. He also made a cross claim against Leventhal for one-half of the fund held by him.

Leventhal answered the complaint and the cross claim of Buckingham, admitting that he held $25,956.10, as the proceeds of the sale of the Watertown property, and seeking instructions, relief from liability, and an award of costs and attorney's fees.

█ Plaintiff's case started out as an equitable action for rescission on account of fraud and failure of consideration. Before the trial, counsel withdrew his claim of fraud against Arnold, whereupon Buckingham moved to dismiss on the ground that plaintiff failed to state a claim upon which relief could be granted. Plaintiff then asserted that he was entitled to the proceeds

from the sale of Arnold's one-half interest in the Watertown property on the following grounds: If the sale by Reid to Porter were valid, then a partnership between Porter and Arnold resulted; Porter, as surviving partner, was vested with title to all of the partnership assets, and was responsible for the application of those assets to the partnership debts; and Buckingham, as executor of the deceased partner, was entitled to an accounting from Porter. In other words, since Porter remained individually liable to creditors of the partnership, he was entitled to exonerate half of his liability from partnership assets that belonged to the deceased partner, and after exonerating himself he could be required to account to the estate of the deceased partner.

Buckingham's motion to dismiss was not granted at that time, since I preferred to hear the merits of plaintiff's action and consider all the connected matters of the case at once. Therefore, under the provisions of Rule 15(b) of the Federal Rules of Civil Procedure, I allowed the case against Buckingham, as well as that against Reid, to go to trial. Counsel for Buckingham was not at all prejudiced by such procedure, he being well prepared to defend against the new contentions of plaintiff.

█ When the case went to trial, plaintiff was thus maintaining alternative positions: that the contract with Reid was voidable for fraud and failure of consideration, and plaintiff chose to rescind and recover what he had paid to Reid; but if the contract must stand, then he was entitled to Buckingham's share of the proceeds of the sale of the Watertown realty as surviving partner of a partnership between Arnold and plaintiff. Plaintiff prays for relief under either the former or the latter contention not under both. This situation is covered by Rule 8(e) (2) of the Federal Rules of Civil Procedure, which states in part: "A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both." Cf. Texas Employers Insurance Ass'n v. Felt, 5 Cir., 150 F.2d 227, 160 A.L.R. 931; Fidelity & Deposit Co. of Maryland v. Krout, 2 Cir., 146 F.2d 531;

Michelson v. Shell Union Oil Corp., D.C., 26 F.Supp. 594. This is not a situation like that where courts so often compel an election between an action for rescission of a contract or an action for damages for deceit, which would result if, in addition to seeking rescission and restitution against Reid, plaintiff should stand by his contract and seek damages for deceit against Reid. See Williston on Contracts, Vol. V, Sec. 1528.

## III.

### The Case Against Reid.

Plaintiff's case for fraud and failure of consideration that would entitle him to rescind his contract with Reid is based on four allegations: (1) That Reid represented Reid Brothers Express, Inc., to be solvent when it was not; (2) that Reid represented the property sold to be worth much more than it was worth in fact; (3) that Reid promised, without intending to keep his promise, to pay the outstanding accounts payable of the corporation; (4) that Reid conveyed no title to Porter of the Watertown property by the deed dated July 1, 1944. I shall consider these allegations in order.

(1) The evidence does not indicate that the corporation was insolvent at the time it was sold to Porter. On the contrary, I find that there was a substantial excess of assets over liabilities at that time, and that the corporation for at least several months after July 1, 1944, was meeting its obligations on time. Plaintiff impliedly admitted the former proposition when he stated that the business was worth about $10,000 less than he paid for it. As to the latter, checks on Reid Brothers Express, Inc., put in evidence by Reid, indicate payment of bills in the regular course as due. Therefore, I find that the corporation was solvent when the contract of sale was made.

(2) Porter testified that Reid calculated his interest in the business (both corporate and unincorporated) to be worth $80,000; and he offered it to Porter for $80,000; Porter offered $70,000; and they finally compromised on $75,000. Reid testified that he calculated his interest in the business to be worth $85,000, and that he offered it to Porter for $75,000. I am not prepared to say that the valuations of Reid were not inflated somewhat. On the other hand, it is clear that the business had substantial value. Porter admitted that the business was worth $65,000. Furthermore, a substantial element of the total value was the value of the rights or licenses which the corporation held and which entitled it to operate trucks in interstate commerce. Porter knew that this element was taken into account in calculating the worth of Reid's share in the business. Under these circumstances, Reid's calculations were, and were known by Porter to be, no more than estimates or opinions as to value, and Porter could not rely on them. This court, sitting in diversity cases, applies the law of Massachusetts in conflicts of law problems. Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. Whether there was fraud by Reid in overvaluing the assets of the business must be determined by the law of Ohio, where the contract was made. Kline v. Baker, 99 Mass. 253. Ohio law is in accord with that of Massachusetts in refusing to characterize mild overstatements of value as fraud. Belmont Mining Co. v. Rogers, 10 Ohio Cir.Ct.R. 305; Cooper v. Lovering, 106 Mass. 77; Deming v. Darling, 148 Mass. 504, 20 N.E. 107, 2 L.R.A. 743. In any event, Porter did check to some extent to determine the value of the business, and I find as a fact that he did not rely on the representations of Reid, and was not misled thereby.

(3) Plaintiff alleges that Reid promised to pay the accounts payable of the corporation. It is clear that a promise, if made without any intention to perform may be a misstatement of fact. Dozier v. Keller, 73 Ohio App. 321, 56 N.E. 2d 288; Clarke Publishing Co. v. Mann, 41 Ohio App. 93; 179 N.E. 814; Feldman v. Witmark, 254 Mass. 480, 150 N.E. 329; Williston on Contracts, Vol. V, Sec. 1496. Reid objected to the admission of oral evidence that he made any such promise, on the ground that it was a promise to answer for the debts of another and required by the statute of frauds to be in writing. I assume that he referred to the Massachusetts statute of frauds, G.L.(Ter.Ed.)

Mass. c. 259, § 1, which would be applied by the Massachusetts courts to contracts made in other states as well as within the forum, since the statute is construed as a procedural or evidentiary matter rather than a matter of substantive law. Emery v. Burbank, 163 Mass. 326, 39 N.E. 1026, 28 L.R.A. 57, 47 Am.St.Rep. 456. However, construing this promise to be within the rule of Nelson v. Boynton, 3 Metc., Mass., 396, 400, 37 Am.Dec. 148, I admitted the evidence of the promise. Although the effect of the alleged promise was that Reid should answer for the debts of Reid Brothers Express, Inc., yet the leading object of Reid was to promote his own interests by the transaction. Under these circumstances, the promise is outside the statute of frauds. Emerson v. Slater, 22 How. 28, 16 L.Ed. 360; Crawford v. Edison, 45 Ohio St. 239, 13 N.E. 80; Texas Co. v. Seaboard National Bank, 26 Ohio App. 104, 159 N.E. 842. In any event, the object here is not to enforce the promise, but to show fraud. In such event the statute of frauds should not be used as an instrument to protect a defrauder. Nor does the parol evidence rule prevent the admission of oral promises in order to show that an integrated contract was induced by fraud. New England Foundation Co., Inc., v. Elliott & Watrous, Inc., 306 Mass. 177, 181, 27 N.E.2d 756; Kean v. New York Central & Hudson R. R. Co., 210 Mass. 449, 97 N.E. 64; Drew v. Christopher Construction Co., 140 Ohio St. 1, 41 N.E.2d 1018; Wigmore on Evidence, Vol. IX, Sec. 2439.

■ Having admitted testimony by Porter that Reid did promise to pay the accounts payable and that he did not fulfill his promise, I find that Porter did not sustain his burden of proving that such a promise was made. Reid categorically denied making such a promise, and the circumstances favor him. Porter said the promise was to pay *all* the accounts payable of the corporation. It seems very unlikely that Reid would promise to pay *all* the debts when he owned only one-half of the stock. And the fact that the entire transaction was represented by the Sale Agreement of July 1, 1944 is some evidence that other promises were not made. Therefore, I

79 F.Supp.—57½

find that Reid did not make the promise as alleged.

■ (4) Porter also urges that he is entitled to rescind because of a failure of consideration, in that Reid had no power to convey an undivided one-half interest in the Watertown property because Reid and Arnold were partners, the property was partnership property held in a tenancy in partnership and not assignable except in connection with the assignment of the rights of all the partners in the same property. G.L.(Ter.Ed.) Mass. c. 108A, § 25 (2) (b). Under the circumstances here, I do not deem it necessary to consider these questions. When Porter and Buckingham sold the Watertown property to Sarah Mogul, Reid joined in the conveyance and released his mortgage on Porter's assurance that Reid would be paid Porter's share. Thereby Porter got what he bargained for. There is no showing whatsoever that he was damaged by the fact that there was an alleged defect in his title between July, 1944, and the time the property was sold in 1946. On the other hand, I think that his securing Reid to participate in the conveyance to Sarah Mogul and release his mortgage on the assurance that Reid would be paid the proceeds of Porter's share amounted to a representation that he would not contest the title of Reid. In reliance on this representation, Reid released his mortgage, to his detriment. Therefore, Porter is estopped to make claims in derogation of the title which he secured from Reid. Cf. Kolasinski v. Paczkowski, 307 Mass. 73, 29 N.E.2d 747; Industrial Bankers of Massachusetts, Inc., v. Reid, Murdoch & Co., 297 Mass. 119, 124, 8 N.E.2d 19; Morgenthaler v. Cohen, 103 Ohio St. 328, 132 N.E. 730.

IV.

Reid's Counterclaim.

■ Defendant Reid has counterclaimed for the balance due on the $73,000 note, and seeks to have one-half the proceeds held by Leventhal applied to the note. Other than the above rejected arguments, Porter has asserted no defenses to the note. There is an action pending in the Ohio courts by Reid against Porter on this note, but this is no hindrance to a judgment is-

suing here prior to any decision in that case. The note refers to the fact that it is secured in part by a mortgage on the Watertown property. The mortgage on the Watertown property, in compliance with the terms of the Sale Agreement of July 1, 1944, contains an agreement by Reid to release the mortgage upon payment of $17,500 to apply to the note. Since the sale to Sarah Mogul was consummated because Reid agreed to release his mortgage for a lesser sum, it is only fair that he should at least have one-half the proceeds held by Leventhal. It does not appear from the evidence that Porter was insolvent at that time, and even if he was, Reid is entitled to his mortgage or at least the amount in consideration of which he agreed to release his mortgage. If this is a preference, it is one which is not illegal, since Reid gets only what he would have gotten as a secured creditor.

## V.

### The Case Against Buckingham.

As mentioned in Section II of this opinion, before trial Porter claimed that he was entitled to one-half the proceeds of the sale of the Watertown property on the grounds he was a surviving partner and was entitled to exonerate himself out of the proceeds of the sale of partnership property. At the trial, it appeared that there was a fund in the name of Porter and Buckingham (as executor of Arnold) in the First National Bank of Akron, in the amount of $1176.33. It also appeared, from the testimony of Burroughs, that Porter and Arnold had set up a claim of $40,000 on the corporation's books as a credit to themselves for the transfer of the trucks, tractors, and trailers to the corporation; that they reduced this claim to $30,000 by issuance of stock to themselves, and by other transactions; and that Porter and the estate of Arnold now have a claim of about $30,000 against the corporation which is worth from thirty to fifty cents on the dollar.

This evidence having been introduced by the defendants, plaintiff changed his prayer for relief and in his brief states: " * * * if the court finds that the plaintiff is not entitled to relief against the defendant, Reid, then the plaintiff contends that he is entitled to 50 per cent of the funds held in

the First National Bank of Akron standing in the name of the plaintiff and the defendant, Buckingham, and to 50 per cent of any dividend declared and paid by the Receiver of the corporation." Apparently this demand for relief is based on a theory that plaintiff is entitled to an accounting from the estate of Arnold.

There are, then, two claims of plaintiff against Buckingham: (1) That plaintiff is entitled to Buckingham's one-half of the proceeds of the sale of the Watertown property; (2) that he is entitled to an accounting for partnership assets, and particularly to one-half of the bank account in Akron and one-half of the claim against the corporation. I reject these claims, and will consider them in order.

(1) I assume, without deciding, that there was, under Ohio law (Klaxon Co. v. Stentor Electric Mfg. Co., Inc., supra; Seemann v. Eneix, 272 Mass. 189, 193, 172 N.E. 243; Restatement, Conflict of Laws, Sec. 342), a valid partnership between Porter and Arnold (Harvey v. Childs and Potter, 28 Ohio St. 319, 22 Am.Rep. 387; Farmers' Insurance Co. v. Ross & Lennan, 29 Ohio St. 429; Union Savings & Loan Co. v. Cook, 127 Ohio St. 26, 186 N.E. 728; Daly v. Savage, 12 Ohio App. 471) and that the Watertown realty was a partnership asset. Greene v. Graham, 5 Ohio 264; Page v. Thomas, 43 Ohio St. 38, 1 N.E. 79, 54 Am.Rep. 788.

If the law of Ohio governs the nature of the interests owned by the partners in Massachusetts real estate, the partners took as tenants in common, and the surviving partner did not take title to all the assets of the partnership. Greene v. Graham, supra; Weitz v. Weitz, 15 Ohio App. 134, 143. Porter might have asserted his rights to have an appraisal and to purchase the assets of the deceased partner under the statutory scheme provided under Section 8085 through 8098 of the Ohio General Code. See Weitz v. Weitz, supra; Rammelsberg v. Mitchell and Lope, 29 Ohio St. 22, 52; Phoenix Ins. Co. v. Carnahan, 63 Ohio St. 258, 264, 58 N.E. 805. Not having followed this procedure, plaintiff is not, under Ohio law, entitled to the interest of his deceased partner. Only one possible partnership debt appears, from the

record, to exist. It amounts to $265 and is owed to an accountant for services rendered. If the partnership is liable for this debt, and it is collected from Porter, he can exonerate himself from the estate (Tiffany, Law of Real Property, Vol. 2, p. 249) without taking the whole assets of the partnership and holding them subject to a trust for the estate of Arnold. In fact, Buckingham agrees to pay one-half of this claim.

▮▮ If the law of Massachusetts be taken to govern the character of the interest in the Watertown property which was owned by Porter and Arnold (Cutter v. Davenport, 1 Pick., Mass., 81, 86, 11 Am. Dec. 149; Restatement, Conflict of Laws, Sec. 215), then the surviving partner takes the rights of the deceased partner in specific partnership property for partnership purposes. G.L.(Ter.Ed.) Mass. c. 108A, § 25(2) (d). The surviving partner thereby is vested with title to the property of the partnership, but he must apply it to the payment of firm debts and account for the balance to the estate of the deceased partner. Cavazza v. Cavazza, 317 Mass. 200, 57 N.E.2d 558; Malden Trust Co. v. Brooks, 291 Mass. 273, 197 N.E. 100; Hawkes v. First National Bank of Greenfield, 264 Mass. 545, 163 N.E. 249, 61 A.L.R. 1408; Wellman v. North, 256 Mass. 496, 152 N.E. 886. Thus, it may well be that Porter had title to the Arnold share of the Watertown real estate. Even so, by his deed to Sarah Mogul he released that interest, and the fund held by Leventhal is in its place. Technically, Porter may have title to the fund; but if so, in the absence of any showing that the fund is necessary to be applied to partnership debts, Porter cannot have it. I have already discussed the one partnership debt, and the fact that there is an adequate fund available for the payment of the debt. On Buckingham's counterclaim against Porter, I will require that one-half the fund held by Leventhal be turned over to Buckingham as an appropriate step toward the winding up of the partnership affairs. In this connection, it is to be noted that plaintiff has his remedies in the Ohio courts, where the estate of Arnold is under administration, to get a fair and complete distribution of partnership assets.

▮ (2) Finally, I come to the plaintiff's contention that he is entitled to an accounting as to two claims, first, the bank account, and, second, the claim of Porter and Arnold against Burroughs, receiver of Reid Brothers Express, Inc. As to the former, Buckingham has offered to account, and I see no need for judicial intervention to compel him to do what he is willing to do. As to the latter, any claims against the corporation should be filed with the receiver at the appropriate time and place. I decline to adjudicate the interests in an hypothetical claim which has not yet been established as having any validity. And even if the claim were an established one, I would decline to compel Buckingham to account. Although an accounting may be appropriate where a fiduciary relationship exists, or where the accounts are so complicated that an action at law would not be an adequate remedy (Berwin v. Cable, 313 Mass. 431, 47 N.E.2d 951; Badger v. McNamara, 123 Mass. 117), yet there is a large measure of discretion vested in the court to decide whether to allow an accounting. Rivoli Drug Co. v. Lynch, 9 Cir., 50 F.2d 536, 537. Because of the willingness of Buckingham to account, and because of the facts that the administration of the estate of Arnold and the receivership of Reid Brothers Express, Inc., are both in Ohio, I decline to allow an accounting here.

Judgment for defendant Reid on plaintiff's complaint.

Judgment for defendant Buckingham on plaintiff's complaint.

Judgment for defendant Reid on his counterclaim against Porter on the purchase money note, with interest, in an amount to be calculated by Reid and submitted to this court within 10 days.

Ordered, that defendant Leventhal, after deducting $100 for attorney's fees in addition to costs of defending this action, pay over one-half the fund remaining in his possession to Reid and one-half to Buckingham after those parties take whatever steps may be necessary to dissolve the temporary restraining order issued by the Superior Court of Massachusetts for Suffolk County.