RICHARD CELLUCCI vs. SUN OIL COMPANY.

Middlesex. January 16, 1974. — December 30, 1974.

Present: HALE, C.J., ROSE, GOODMAN, & ARMSTRONG, JJ.

Contract, For sale of real estate, Performance and breach. Frauds,
Statute of. Estoppel. Deceit. Fraud. Agency, Scope of au-
thority or employment.

Where an oil company's agent incorrectly represented to a landowner
over a period of time that the company intended to buy his land
and that the landowner was legally bound by a purchase and sale
agreement signed by him but not by the company, and where the
landowner relied on these misrepresentations to his detriment, the
company was properly estopped from asserting that it had not
signed the purchase and sale agreement. [723-732]
A condition of a purchase and sale agreement that the purchaser also
be able to buy abutting land was excused by the purchaser's rejec-
tion of the abutter's offer to sell at a price the purchaser itself had
suggested. [733]
Where a landowner secured a gasoline storage permit in order to ful-
fill a condition of a purchase and sale agreement with an oil
company, with the knowledge and coöperation of the company,
the company could not contend for the first time at the trial of a
suit by the landowner for specific performance that the permit
may be deficient for technical reasons. [733]
In the circumstances, repudiation of a purchase and sale agreement
by one party excused performance by the other party of certain
conditions in the agreement in order to obtain specific perform-
ance. [734]
A seller of land who was to have paid a sum of money to a third
party to fulfill a condition of the purchase and sale agreement but
did not was not entitled in his suit for specific performance to the
full purchase price, but only to the purchase price minus that sum
of money. [734]

BILL IN EQUITY filed in the Probate Court for the county of Middlesex on April 29, 1971.

A demurrer was overruled by *Freedman, J.*, and the suit was heard on the merits by *Martin, J.*

*Neil Sugarman* for the defendant.

*David H. Locke* (*A. Arnold Lundwall* with him) for the plaintiff.

ARMSTRONG, J.   This bill in equity was brought by the plaintiff for specific performance of an alleged contract for the sale of his land in Hudson (locus) to the defendant (Sunoco).   Sunoco appealed from an interlocutory decree which overruled its demurrer to the bill and from a final decree which ordered specific performance of the contract.   The evidence is reported, and the judge has filed a report of material facts.

We summarize the judge's findings, supplemented interstitially by us from the evidence. *Turner* v. *Guy, ante,* 343, 344 (1974).   In late May, 1970, one Williams, a real estate broker in Framingham, who was aware of the plaintiff's interest in selling the locus, and who specialized in arranging sales of land to be used for gasoline stations, took one Patterson, a real estate representative of Sunoco, to Hudson to see the locus and to meet the plaintiff.   The plaintiff told Patterson that he was willing to sell the locus for $100,000 net.   Around June 15, 1970, Patterson, through Williams, forwarded to the plaintiff for his signature a purchase and sale agreement which provided for a purchase price of $110,000, representing $100,000 plus a ten percent brokerage commission for Williams.

The purchase and sale agreement followed a form which one Ramsey, Sunoco's northeast regional land manager, testified had been in use "since prior to the time . . . [he] came with the company" twenty-six years earlier.   Its execution clause provided: "This agreement merges all prior negotiations and understandings between the parties and constitutes their entire contract which is binding upon the Seller . . . when executed by Seller,

and is binding upon Buyer . . . only when executed by an official of Buyer, regardless of any written or verbal representation of any agent, manager or other employee of Buyer to the contrary." At the bottom of the agreement were places for the signatures of the seller and witnesses, the signature of a vice president of Sunoco, and attestation by an assistant secretary of Sunoco. The evidence did not indicate that the agreement was signed by a vice president or other "official" of Sunoco.

The proposed agreement was conditioned upon (1) Sunoco's ability to purchase from one Perry her property which abutted the plaintiff's and (2) the plaintiff's securing of the necessary licenses and permits for Sunoco to operate a gasoline station on the locus. The closing date was to be November 20, 1970. Time was not expressly made of the essence. [1]

The plaintiff signed the agreement in duplicate around June 15, 1970. Near the end of June, Perry signed an agreement to sell her property to Sunoco. [2] Williams then forwarded both documents with duplicates to Patterson.

The plaintiff conceded that he understood that Patterson lacked authority to bind Sunoco, and that he knew that district or regional approvals were required before Sunoco's Philadelphia home office gave its final approval.

---

[1] The agreement contained a printed clause dealing with time for performance, which permitted Sunoco, at its option, to extend the time for performance by 180 days or to cancel the agreement if it was not performed by the closing date. It also contained a typed "special clause" which appears to provide for an automatic ninety-day extension if the agreement cannot be performed by the closing date due to non-fulfillment by that date of various conditions. There is no evidence of any action by Sunoco purporting either to extend or to cancel the agreement.

[2] The purchase price for Perry's property was to be $44,000, representing $40,000 for Perry plus a ten percent commission for Williams. In order to induce Perry to sign her agreement, the plaintiff entered into a separate contract with her to pay her $5,000 for the expense and inconvenience of moving.

He also testified, and the judge so found, that Patterson told him that final approval was automatic or perfunctory once the requisite district and regional approvals had been obtained.

In early July, 1970, one Harvey, a real estate representative of a competing oil company, attempted to enter into negotiations with the plaintiff for the purchase of the locus. The plaintiff thereupon called Patterson and informed him of Harvey's interest. The plaintiff testified that Patterson assured him that the deal was "all set" but would take some time "to go through channels." Patterson's testimony was that he told the plaintiff that he was under no obligation to Sunoco and was free to negotiate an agreement with the competing oil company. Harvey continued to approach the plaintiff into September, when Patterson visited the locus with a team of Sunoco's engineers and surveyors. The plaintiff told Patterson of an offer made for the locus by the competing oil company. Patterson's reply was the subject of conflicting testimony. Patterson testified that he again told the plaintiff that he was free to enter into an agreement with Sunoco's competitor, and that he had no binding contract with Sunoco. One Robb, then an employee of the plaintiff, testified that Patterson told the plaintiff: "Well, you cannot do anything with the property. We have a purchase and sale agreement on the property. We bought it." This testimony was corroborated by the plaintiff. The judge accepted it as true, and rejected Patterson's testimony. Although the judge's report of material facts is not so detailed as it might be, it is manifest from his findings, coupled with the reported evidence (see *Matter of Loeb*, 315 Mass. 191, 195 [1943]), that in reliance on these statements by Patterson the plaintiff terminated negotiations with Sunoco's competitor.

There was other testimony bearing on the question of the plaintiff's reliance, to his detriment, on Patterson's assurances that the deal would go through. Such testimony concerned the plaintiff's successful effort during

October, 1970, with the help of an attorney he hired for the purpose, to secure a gasoline storage permit for the locus, and his activities and expenditures in preparing a new site in Marlborough where he could relocate his automobile agency which he ran at the time on the locus. Although the judge found these acts and expenditures to have been undertaken with the knowledge of Patterson and, in the case of the permit, with the active coöperation of Patterson, we omit discussion in detail of these aspects of the evidence. At best they furnish additional instances of detrimental reliance by the plaintiff on Patterson's assurances.

The plaintiff testified that he was told by Patterson, and the judge so found, that the agreement had been approved at the district and regional levels and had been sent to the home office in Philadelphia for approval. It was neither approved nor rejected by the home office until long after November 20, 1970, the date set in the agreement for performance.[3] Patterson continued to assure the plaintiff that the deal would go through and that approval by the home office was perfunctory.

By February, 1971, Cellucci had been informed that Sunoco's home office felt the price for his and Perry's combined parcels was too high, and unsuccessful attempts to renegotiate the price were made in that and the succeeding month. The plaintiff testified that in February he asked Patterson to have the agreement which bore his signature returned to him. He also contacted the com-

---

[3] This finding represents a rejection of Patterson's testimony, contradicted by Williams, that on October 29, 1970, he received notice of rejection by the home office, and so notified Williams at the time. It appears also to represent a rejection of Williams' testimony that she was told by Patterson at the end of November that the home office thought the price for the combined parcels was too high, and that she immediately notified the plaintiff. The judge appears to have accepted the plaintiff's story that he was assured repeatedly during this time that the agreement would be signed, and that it was not until February, 1971, that he got his first inkling that Sunoco's home office was questioning the price.

peting oil company, but found that it was no longer interested in acquiring the locus. Thereafter, the plaintiff engaged his present counsel, who notified Sunoco by letter dated April 6, 1971, that tender of a deed would be made to Sunoco on April 21. Before that date arrived, the plaintiff received a letter from Sunoco dated April 12 which informed him of the rejection of his offer. Enclosed were the plaintiff's signatures which had been clipped from the duplicate agreements. Tender was nevertheless made on April 21 in accordance with the notice.

Although Sunoco drafted the standard form instrument which it sent to the plaintiff, his execution of that document was merely an offer which Sunoco had the power to accept or reject. *Cruver Mfg. Co.* v. *Rousseau,* 240 Mass. 168, 169 (1921). *Kuzmeskus* v. *Pickup Motor Co. Inc.* 330 Mass. 490, 493 (1953). It is undisputed that there was no acceptance by Sunoco in the manner called for by the offer. And, as Sunoco correctly contends, it is the general rule that the Statute of Frauds bars the enforcement of a contract for the sale of land unless it "is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized." G. L. c. 259, § 1. This rule applies in equity as well as at law. *Glass* v. *Hulbert,* 102 Mass. 24, 43 (1869). It applies in suits for specific performance. *Witherington* v. *Eldredge,* 264 Mass. 166, 175 (1928).

But it was the theory of the plaintiff's bill[4] and the basis of the judge's decision that Sunoco, having misled

---

[4] We do not accept Sunoco's contentions that the bill relies only on the theory of a fully executed contract and not on estoppel. Although the latter word is not used, the allegations of paragraphs six and seven, coupled with the statement that the plaintiff entered into the agreement, but with no corresponding statement concerning Sunoco, and with the "agreement" attached executed by the plaintiff but not Sunoco, sufficiently, although not so clearly as would be desirable, suggest a cause of action based on estoppel. The bill sets forth, albeit vaguely, facts upon which relief can be granted. See *Ryan* v. *Brennan,* 1 Mass. App. Ct. 469, 474 (1973).

the plaintiff into thinking that it would accept the offer it had solicited from him and having known that he was changing his position (and having induced him to change his position) in reliance on that impression, should be estopped to assert that it had not accepted the offer. Such an estoppel, if appropriately applied in this case, would also preclude Sunoco from asserting the affirmative defense of the Statute of Frauds. *Glass* v. *Hulbert, supra,* at 43. *Andrews* v. *Charon,* 289 Mass. 1, 5 (1935). *Levin* v. *Rose,* 302 Mass. 378, 381-382 (1939).

Sunoco contends that estoppel cannot be applied in this case. It recognizes that the " 'essential factors giving rise to an estoppel are . . . (1.) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2.) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made. (3.) Detriment to such person as a consequence of the act or omission.' *Greenwood* v. *Martins Bank, Ltd.* [1933] A. C. 51, 57, cited with approval in *Cleaveland* v. *Malden Sav. Bank,* 291 Mass. 295, 297-298 [1935]." *Industrial Bankers of Mass. Inc.* v. *Reid, Murdoch & Co.* 297 Mass. 119, 124 (1937).

Applying this test to the present case, Sunoco argues with some justification that the plaintiff's acts and expenditures in furtherance of transferring his automobile agency to Marlborough were shown to have been a predetermined course of action rather than a result of reliance on Patterson's assurances.

With respect to the expenditures involved in obtaining the gasoline storage permit, Sunoco argues that Patterson attempted to discourage the plaintiff from prematurely engaging counsel and making the application and did not in any way assist or encourage the plaintiff in the undertaking. In so doing, however, it relies on conclusions which could be drawn from the conflicting testimony but which are at variance with the conclusions

drawn by the judge. We cannot say that the judge's conclusions are plainly wrong, and therefore must accept them. *All Stainless, Inc.* v. *Colby,* 364 Mass. 773, 776 (1974).[5]

Decisive of the case, in our view, is the plaintiff's detrimental reliance in breaking off negotiations with Sunoco's competitor. In contending that the evidence does not sustain the judge's general finding of detrimental reliance, Sunoco omits discussion of this evidence, perhaps because the judge did not in so many words say in his report of material facts that, in reliance on Patterson's statements, the plaintiff broke off the negotiations. The finding is there, however, although in general terms;[6] and if we felt it were not, we should make it ourselves, as it relies on undisputed testimony and is the obviously intended result of the words which the judge, on conflicting testimony, found Patterson to have spoken. See *Matter of Loeb,* 315 Mass. 191, 195 (1943). *All Stainless, Inc.* v. *Colby, supra.*

Patterson's misrepresentations were both factual and legal. The factual misrepresentations are found (1) in his repeated assurances that the deal was, in his words, "all set," which we interpret as a prediction that Sunoco would accept the plaintiff's solicited offer; and (2) in his representations that the decision whether to accept the plaintiff's offer was to be made at the district and regional levels, where in fact approval was obtained, and that the signature by a vice president at the home office

---

[5] Although the status of exhibit H, a photograph of a service station, as evidence was left ambiguous when it was admitted, there was earlier testimony, not objected to, that Sunoco supplied it to the attorney the plaintiff engaged to handle the application for the storage permit.

[6] The judge's sixteenth finding was, "The Seller changed his position drastically after affixing his signature to the purported agreement: he did this with the open knowledge and active cooperation of representatives of Sunoco. He was assured that approval by the Oz-like personage in Philadelphia was perfunctory and he justifiably relied on such assurance."

was a purely formal or perfunctory matter. In view of Patterson's own testimony, no contention is or could be made that these statements, if made, were not fraudulent in nature. Patterson's sole contention was that he did not make the statements, and the judge found to the contrary.

Although as a general rule representations as to future events are not actionable (*Knowlton* v. *Keenan*, 146 Mass. 86 [1888]; *Brown* v. *C. A. Pierce & Co.* 229 Mass. 44, 47 [1918]; *Loughery* v. *Central Trust Co.* 258 Mass. 172, 175 [1927]), an exception has been recognized "where the parties to the transaction are not on equal footing but where one has or is in a position where he should have superior knowledge concerning the matters to which the misrepresentations relate." Williston, Contracts, § 1496, pp. 373-374 (3d ed. 1970). Furthermore, a prediction that Sunoco will sign a contract is not like a prediction as to the weather. It lies within the entire and exclusive control of Sunoco. Representations regarding the internal processes of Sunoco and the likelihood of its acceptance did not exceed any apparent limitations on Patterson's authority. Sunoco is liable for the fraudulent representations of Patterson in doing the business which Sunoco entrusted to him. *Haskell* v. *Starbird*, 152 Mass. 117, 120-121 (1890). *Weeks* v. *Currier*, 172 Mass. 53, 55 (1898). *Charbonneau* v. *Rokicki*, 278 Mass. 524, 526 (1932). *McCarthy* v. *Brockton Natl. Bank*, 314 Mass. 318, 325 (1943).

The misrepresentation of law is found in Patterson's statements to the plaintiff that he (the plaintiff) could not "do anything with the property. We have a purchase and sale agreement on the property. We bought it." Although these words might be read as implying that Sunoco had signed the agreement, we do not draw such an inference and do not understand the judge to have done so. Rather, they appear to us to be a representation to the plaintiff that the legal effect of his having

signed the agreement was to deprive him of the right to consummate an agreement to convey the property to Sunoco's competitor. So interpreted, Patterson's words reinforced the statement communicated by Sunoco to the plaintiff in the language of its standard form purchase and sale agreement, namely, that the agreement was binding upon the plaintiff when signed by the plaintiff, even though it was not to become binding upon Sunoco until a later date. Both representations were, of course, incorrect.[7] See *Bernstein* v. *W. B. Mfg. Co.* 235 Mass. 425, 427 (1920); *S.C.* 238 Mass. 589, 591 (1921); *Morad* v. *Silva,* 331 Mass. 94, 98 (1954); Corbin, Contracts, § 152, pp. 4-10 (1963).

A misrepresentation of law, particularly "as to the private right or interests of a party under a written instrument" (*Reggio* v. *Warren,* 207 Mass. 525, 534 [1911]), made by one possessed of superior knowledge to take advantage of the relative ignorance of another, may be ground for judicial relief. *Rosenberg* v. *Doe,* 148 Mass. 560 (1889). *Motherway* v. *Wall,* 168 Mass. 333 (1897). *Hashem* v. *Massachusetts Security Co.* 255 Mass. 29 (1926). *Jekshewitz* v. *Groswald,* 265 Mass. 413 (1929). *Boston Five Cents Sav. Bank* v. *Brooks,* 309 Mass. 52, 55-57 (1941). *Joseph* v. *Tata,* 339 Mass. 600, 602 (1959). Restatement: Contracts, § 474, comment d (1932). Williston, Contracts, § 1591 (3d ed. 1970). Consider also *Kannavos* v. *Annino,* 356 Mass. 42, 46-49 (1969). Such superior knowledge must be imputed to a representative of a commercial company with respect to

---

[7] Another misrepresentation of law might have been found in Patterson's own testimony to the effect that he informed the plaintiff that he could extricate himself from his obligation to Sunoco by sending a "letter of rejection" to Sunoco. If believed, the statement could be read to imply that more was needed to withdraw the offer than oral notice to Patterson, which would be an incorrect statement of law. Corbin, Contracts, § 38, p. 157, fn. 18 (1963). Such a statement would again tend to make the plaintiff feel he was more restricted by his having signed the agreement than he was in fact.

the legal effect of the standard form agreements which are used by the company and which it is the job of the representative to induce third persons to sign. Such persons, even if they read the standard form agreement, cannot typically be expected to be so familiar with the legal effect of its provisions as the company and its representatives. Representations by the latter as to the legal effect of such agreements are often justifiably relied on by those whom they invite to sign them. In these circumstances a false representation made for the purpose of inducing such a person to do an act for the benefit of the company or to refrain from doing an act to the detriment of the company warrants appropriate judicial relief if, in reliance on the misrepresentation, the action intended to be induced does in fact result.

That Patterson had neither express authority nor ostensible authority to accept the plaintiff's offer and to commit Sunoco to the agreement does not preclude a finding of estoppel. That proposition is clearly true of the factual misrepresentations. The reason is that Patterson must be considered to have had ostensible authority or inherent power to represent to persons with whom he dealt on behalf of Sunoco what the company's processes were as they bore on the business he was conducting with them. See Restatement 2d: Agency, § 8A, and comment a (1958). For the same reason we find untenable the notion that misrepresentations by a company's representatives as to the legal effect of the company's standard forms, made to further the company's business interests, and relied on by third persons, should afford no basis for relief against the company.

We concur in the ruling of the Probate Court that Sunoco is estopped to assert that the plaintiff does not have a binding contract with it for the purchase and sale of the locus. The rights of the parties are to be measured as if an appropriate officer of Sunoco had signed the agreement.

The question remains whether the plaintiff's failure to show that all conditions of the agreement have been

accomplished should be a bar to specific enforcement of the agreement. The general rule is that "[w]hen an agreement is made subject to conditions all such conditions must be performed to entitle a party to specific performance. *Barrell* v. *Britton*, 252 Mass. 504, 507 [1925]. *Guerette* v. *Cheetham*, 289 Mass. 240 [1935]." *King* v. *Boston Port Dev. Co.* 290 Mass. 263, 265 (1935). Restatement: Contracts, § 373 (1932).

Performance of a condition on a promise is excused, however, if the promisor hinders or prevents its performance or occurrence. *Rigs* v. *Sokol*, 318 Mass. 337, 345 (1945). Restatement: Contracts, § 295 (1932). This principle excuses the condition that Sunoco be able to purchase the Perry property concurrently with the locus. Sunoco, partly through the plaintiff's $5,000 inducement to Perry, secured an offer from Perry to sell her property at the price Sunoco suggested. Its rejection of that offer should not prejudice the plaintiff.

The plaintiff secured the critical gasoline storage permit in October, 1970. This was done, as the judge found, with the knowledge and active coöperation of Sunoco. The latter contended at trial that the permit may be deficient in that the notice published referred only to the locus and not to the Perry property. It does not lie in the defendant's mouth to raise this contention for the first time at trial. There is no contention that it was raised at any earlier time. It was never suggested as a reason for backing away from the purchase.

The securing of the permit for storage, as well as all the other permits and licenses required by the agreement, was the primary obligation of the plaintiff. The agreement clearly contemplated, however, that the plaintiff was to receive the coöperation of Sunoco, at least to the extent of providing him with plans and specifications which told him with certainty what to apply for. The evidence was uncontradicted that Sunoco never asked the plaintiff to secure, or informed him of their requirements for the purpose of securing, any license or permit other

than that for gasoline storage. The plaintiff testified that he was at all times ready and willing to perform his obligations under the agreement, and the judge so found. At no time did Sunoco assign the failure to secure any permit or license as a reason for its failure to go through with the purchase.

This is not an appropriate case to condition a decree for specific performance on the plaintiff's securing at this late date whatever permits and licenses may be required by such plans and specifications as Sunoco may now present. To do so at this time, particularly after Sunoco has rejected the offer by Perry of land which might have been required in addition to the locus to afford suitable dimensions for a station, would not have the effect of duplicating the obligation that the plaintiff undertook at a time when both parties contemplated that Sunoco desired to build and operate a gasoline service station on the locus. Rather, Sunoco's position, at least since February, 1971, has been one of repudiation of the contractual obligation they are estopped to deny. We hold that Sunoco's repudiation excuses performance of the remaining conditions. Restatement: Contracts, § 306 (1932). The final decree, which is ambiguous in this respect, should be modified to make clear that specific performance is not conditioned on anything other than tender by the plaintiff of such deed as is called for by the agreement within such time as the final decree specifies.

A further modification in the terms of the final decree is required. If the sales of the plaintiff's and Perry's properties had gone through as originally contemplated, the plaintiff would have been obligated to pay Perry $5,000, and would thus have realized $95,000 net from the proceeds. There is no reason he should be placed in a better position because the arrangement originally contemplated cannot now be brought about. Sunoco should receive the benefit of a $5,000 reduction in the purchase price.

The interlocutory decree is affirmed. The final decree, as modified in accordance with this opinion, is affirmed.

*So ordered.*