## ANTHONY C. WEEKS *vs.* HARBOR NATIONAL BANK.

Suffolk. September 16, 1982. — February 8, 1983.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Consumer Protection Act,* Availability of remedy, Employment. *Contract,* Employment. *Practice, Civil,* Special questions to jury, Instructions to jury.

The remedial provisions of the Consumer Protection Act, G. L. c. 93A, § 11, are not applicable to any unfair or deceptive acts committed by an employer in discharging an employee. [144]

Where the question whether an employee had a contract of annual employment with his employer was not within the scope of special questions submitted to the jury at the trial of a civil action, and no objection was made to its omission, the judge was free to find the facts regarding this issue and, consequently, there was no error in the judge's failure to instruct the jury on it. [144-145]

At the trial of an action by an employee alleging that his employment was terminated in bad faith to deprive him of benefits, it was immaterial whether this claim was within the scope of special questions submitted to the jury where both the judge and the jury found that the termination of employment was not improper and where the employee raised no further objection after the judge instructed the jury on the obligation of good faith in response to a request by the employee. [145-147]

CIVIL ACTION commenced in the Superior Court on March 29, 1976.

The case was tried before *Zobel,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Paul M. Stein (Will J. Bangs* with him) for the plaintiff.

*Stephen S. Young (Mark Schonfeld* with him) for the defendant.

LYNCH, J. This case involves a dispute between an employee, Anthony C. Weeks, and his employer, Harbor National Bank (Harbor), as to the circumstances attending

Harbor's hiring and discharging of Weeks. After his discharge, Weeks brought suit against Harbor alleging breach of contract in the hiring process, fraud in the hiring process, violation of G. L. c. 93A, § 11, breach of contract of annual employment, and bad faith termination of an employment contract. The judge submitted six special questions to the jury, who returned special verdicts in the form of special written findings on each issue submitted. Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974).[1] The judge ruled that the jury's finding that the defendant's misrepresentations in the hiring process caused no damage to Weeks precluded recovery on the counts for breach of contract and for fraud in the hiring process.

In regard to the c. 93A claim the jury found that the discharge of Weeks was not wrongful, but that it was unfair or deceptive. The judge ruled, however, as a matter of law that c. 93A, § 11, did not apply to the employment relationship presented in this case. In doing so, the judge relied on this court's decision in *Second Boston Corp. v. Smith,* 377 Mass. 918 (1979). Additionally, the judge found that Harbor acted in good faith and "with commercial and moral propriety" in discharging Weeks and, thus, he concluded that if he was not bound by the jury's finding, he would find that the discharge was not wrongful, unfair, or deceptive.

---

[1] The special questions and special verdicts were as follows:

"1. Did Harbor National Bank, in the process of hiring Anthony C. Weeks, knowingly make any misrepresentation to him?" "Yes."

"2. Did Harbor National Bank, in the process of hiring Anthony C. Weeks, negligently make any misrepresentation to him?" "No."

"3. If you answered 'Yes' to either Question No. 1, *or* Question No. 2, *or* both, please state, *in words,* the *total* amount of damages to Anthony C. Weeks proximately caused by any misrepresentation(s) made to him by Harbor National Bank:" "Zero Dollars."

"4. Did Harbor National Bank wrongfully discharge Anthony C. Weeks?" "No."

"5. Was Harbor National Bank's discharge of Anthony C. Weeks unfair or deceptive?" "Yes."

"6. If you answered 'Yes' to *either* Question No. 4 *or* Question No. 5 *or* both, please state, in words, the *total* amount of damages to Anthony C. Weeks proximately caused by Harbor National Bank's discharging him:" "Twenty Five Thousand Dollars."

The judge also found that no contract of annual employment existed between Harbor and Weeks. While the annual nature of Weeks' salary permitted the inference that he had a yearly contract, the judge concluded from the evidence that Weeks "was an employee at sufferance" whose employment Harbor could terminate whenever it determined, in good faith, that the best interests of the bank necessitated it.

Based on the jury's answers and his findings and rulings of law, the judge ordered judgment for Harbor on all counts. Weeks filed an application for direct appellate review which this court granted. G. L. c. 211A, § 10(a). We now affirm.

The jury's responses to the special questions and the judge's findings reveal the following facts. In early 1973, Weeks entered into negotiations with Harbor for future employment. An important element of these negotiations to Weeks was Harbor's promise that it would have a pension or retirement plan in effect by the end of 1973. In April, 1973, Weeks wrote a letter to an executive vice-president of Harbor, outlining the proposed conditions for his employment at Harbor. These conditions included a reference to "a pension and retirement plan."

Weeks began working for Harbor in May, 1973. Following his arrival at Harbor, Weeks made repeated inquiries concerning implementation of the pension plan. Harbor, however, never formulated or put into effect a pension plan. In their answers to the special questions, the jury indicated that they believed Weeks' allegations that during the hiring process Harbor knowingly made misrepresentations to Weeks that it was setting up a pension plan to take effect on or about January 1, 1974. The jury further found, however, that Weeks had suffered no damages as a result of these misrepresentations.

On June 25, 1975, Harbor's major shareholders sold their controlling interests in the bank. The new president and chief executive officer of Harbor began assessing the performance of Harbor's employees soon after taking office. Following a review of Weeks' work he concluded that Weeks

had not been properly handling the bank's commercial loan portfolio and that he lacked the professional competence desired in a person filling Weeks' position. After some equivocation, Weeks was asked for his resignation.

1. *Applicability of G. L. c. 93A, § 11.* We have recently concluded that the remedies of G. L. c. 93A, § 11, are not available to employees in disputes against their employers, which arise from the employment relationship. *Manning* v. *Zuckerman, ante* 8, 11-13 (1983). There are no circumstances in this case that lead us to a different conclusion.

Weeks served as an employee of Harbor from May, 1973, to June, 1975. Consequently, if Harbor committed any unfair or deceptive acts in discharging Weeks, these acts necessarily occurred in the context of the parties' employment relationship and not in a commercial transaction between distinct business entities.[2] Since Weeks was Harbor's employee, he fails to meet the § 11 statutory requirement that he be a business person engaged in trade or commerce with another business person. *Manning* v. *Zuckerman, supra.*

2. *Contract for annual employment.* In count 4 of his amended complaint Weeks alleged that he had entered into a contract of annual employment with Harbor on February 19, 1975, and that his right to damages under that contract arose as a result of his discharge on June 25, 1975, before the contract was completed.

---

[2] In his complaint, Weeks also alleged that Harbor committed unfair or deceptive acts or practices in the hiring process. However, the jury in their answers to the special questions found that Weeks suffered no damages from any misrepresentation made by Harbor in the hiring process, and this precludes any relief under c. 93A, § 11, since damages are an essential element of the cause of action. General Laws c. 93A, § 11, inserted by St. 1972, c. 614, § 2, reads in pertinent part: "Any person who engages in the conduct of any trade or commerce and *who suffers any loss of money or property, real or personal,* as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice . . . may . . . bring an action . . ." (emphasis added). *Frank Cooke, Inc.* v. *Hurwitz,* 10 Mass. App. Ct. 99, 111 (1980) (plaintiff under § 11 must show loss of money or property).

The judge ruled that the issue whether Weeks had a contract of annual employment was not submitted to the jury in the special questions. If that ruling is correct, those issues were for the judge to decide under Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974). This rule specifically provides that if, in submitting special questions to the jury, the judge "omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding." *Id.* There is no question that the annual contract claim was not within the scope of the questions submitted to the jury. Since Weeks did not demand that this issue be submitted in the special questions, the judge properly decided any issue of fact in regard to it. Despite that fact, Weeks argues that the judge somehow committed reversible error because he failed to explain adequately to the jury Weeks' claim for breach of contract for annual employment. Clearly no error can arise from an instruction on an issue that the jury did not decide.

The judge decided that no contract of annual employment existed and that the plaintiff was an "employee at sufferance." The judge's findings of fact may not be set aside unless clearly erroneous. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). *Freyermuth* v. *Lutfy,* 376 Mass. 612, 615 (1978). The judge stated that the evidence permitted this inference, which he drew, and Harbor could thus terminate Weeks' employment whenever it concluded, in good faith, that the best interests of the bank mandated his release. The judge believed the testimony of Harbor's witnesses on this point and he rejected Weeks' evidence and testimony. At the trial, Weeks himself admitted he was aware that as an officer of the bank he served at the pleasure of Harbor's board of directors in accordance with the bank's by-laws. The plaintiff failed to sustain his burden of proof and, therefore, we find no reason to disturb the judge's findings.

3. *Bad faith termination.* In count 5 the plaintiff alleged that his termination was made in bad faith to deprive him of

benefits. The judge ruled that this issue was also not submitted to the jury in the special questions. His ruling on this point is subject to some question, however, because he did ask the jury to determine if Harbor had wrongfully discharged Weeks. It is not necessary for us to determine if this claim was within the scope of the special questions because, either way, there could have been no error. Both the judge and the jury found that Harbor's termination of Weeks was not improper. If it was for the judge to decide, we would apply the "not clearly erroneous" test to this finding for the reasons stated in our discussion of the annual employment claim. That the finding survives this test requires no further elaboration. Weeks claims that the error in regard to this issue arose from the judge's failure properly to instruct the jury on the implied covenant of good faith. Weeks failed, however, to make a proper objection to the charge. After Weeks objected to the judge's failure to charge as requested on the obligation of good faith, the judge recharged on this issue,[3] and Weeks raised no further

---

[3] Weeks' requested instructions, numbers 23 and 27, were as follows:

"23. In every contract of employment there is an implied covenant of good faith and fair dealing. *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 104 (1977). A termination of employment not made in good faith constitutes a breach of the contract. Such a breach is a bad faith or wrongful termination and does not require malice or harmful intent, but merely the lack of good faith. *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 101 (1977).

"27. 'The law puts its imprimatur on fair dealing, good faith, and fundamental honesty' and 'condemns conduct which fails to reflect these minimum accepted moral values by penalizing such conduct whenever it occurs.' *U.S.M. Corp.* v. *Marson Fastener Corp.*, [379 Mass. 90, 104 (1979)] '[I]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing.' *Druker* v. *Roland Wm. Jutras Associates, Inc.*, 370 Mass. 383 (1976)."

A somewhat cryptic reference to requests 23 and 27 was made at the end of the plaintiff's objection to the charge. The defendant's lawyer said, "I am lost here," and the plaintiff's lawyer replied, "[r]egarding the obligation of good faith." Thereafter the judge charged: "Now, with respect to the matter of a reasonable business decision, the question there

objection. Thus, his failure to preserve properly the issue bars any claim of error arising from improper instructions. Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974). *Narkin* v. *Springfield*, 5 Mass. App. Ct. 489 (1977).

Since the findings of fact by the trial judge were not clearly erroneous and the rulings of law were proper, the entry of judgment for the defendant must be upheld.

*Judgment affirmed.*

to decide is whether or not the firing of Mr. Weeks was made, not only as a reasonable business decision, but whether it was made in good faith on the basis of reasonable business factors and judgment."