Robert W. HOFFMAN, Plaintiff,

v.

OPTIMA SYSTEMS, INC., Leon Ekchian, Kevork K. Ekchian and Jack A. Ekchian, Defendants.

Civ. A. No. 87–361–Y.

United States District Court,
D. Massachusetts.

March 25, 1988.

Connolly, Howard S. Ross, Shuman & Ross, Sharon, Mass., for plaintiff.

Lawrence J. Crowley, Jr., Reimer & Braunstein, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiff Robert Hoffman ("Hoffman") brings this action against defendant Optima Systems, Inc. ("Optima") and defendants Leon Ekchian, Kevork Ekchian and Jack Ekchian (collectively, the "Ekchians") in a complaint filed February 13, 1987.

Hoffman alleges that Optima, a California corporation, and the Ekchians, directors and shareholders of Optima, breached an oral employment contract between Hoffman and Optima. Hoffman charges each defendant with fraud, breach of an express contract, quantum meruit, breach of Mass. Gen.Laws ch. 93A, and intentional infliction of severe emotional distress. Hoffman fur-

ther charges the Ekchians with negligent mismanagement of the corporation Optima. Hoffman asserts subject matter jurisdiction based on diversity of citizenship with the amount in controversy in excess of $10,000 pursuant to 28 U.S.C. § 1332.

On June 24, 1987, defendants Optima and Jack Ekchian moved to 1) dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), failure to state a claim upon which relief may be granted; and 2) transfer the venue of the case pursuant to 28 U.S.C. § 1404(a) to the appropriate United States District Court in California.

## I. FACTUAL BACKGROUND

Based on the averments in the complaint which are accepted as true for purposes of this motion only, Hoffman asserts the following facts.

Until October, 1982, Hoffman was an engineer with Polaroid Corporation ("Polaroid") located in Cambridge, Massachusetts. At or about this time, Hoffman entered into an oral employment agreement with Optima and the Ekchians within the Commonwealth of Massachusetts. Hoffman, Optima and the Ekchians agreed that, effective January 1, 1983, Hoffman would resign from Polaroid and would be employed as both Vice President of Engineering and a full principal of Optima. In exchange for Hoffman's services, Optima and the Ekchians would pay him both a salary and an eighteen percent (18%) equity ownership interest in Optima.

Hoffman resigned from Polaroid, and served as the Vice President of Engineering of Optima from January 1, 1983 to July 15, 1986. Hoffman was responsible for the design and management of Optima products and, at Optima's request, he assigned certain patents that he owned to Optima for its use and benefit. During the first nine months of employment, Optima and the Ekchians did not pay Hoffman a salary for his services and, thereafter, Hoffman alleges, he was paid a fraction of the fair market value of his services. Moreover, with $7,500.00 of his own money, Hoffman purchased equipment and materials for the benefit of Optima and the Ekchians, purchases for which he was not reimbursed.

On July 15, 1986, Hoffman resigned from Optima on the grounds that Optima and the Ekchians have refused to 1) pay Hoffman the eighteen percent equity interest in Optima; 2) pay Hoffman any additional money due; 3) reimburse, or alternatively, return Hoffman's personal property and materials at Optima's place of business in Burlington, Massachusetts; and 4) grant Hoffman access to the books and records of Optima. According to Hoffman's complaint, the conduct of both Optima and the Ekchians constitutes fraud, breach of express contract, breach of Mass.Gen.Laws ch. 93A, and intentional infliction of emotional distress. Hoffman also contends that he is entitled to recover on the theory of quantum meruit. Further, Hoffman alleges that the Ekchians negligently mismanaged Optima.

## II. THE MOTIONS TO DISMISS

For the purpose of a motion to dismiss, all factual allegations in the plaintiff's complaint must be taken as true. *See, e.g., Gavrilles v. O'Connor,* 579 F.Supp. 301, 303 (D.Mass.1984). To grant a motion to dismiss it must appear beyond doubt that the plaintiff can prove no set of facts in support of that claim which would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### A. Fed.R.Civ.P. 9(b)

Optima and Jack Ekchian move to dismiss Count I on the grounds that Hoffman has failed to allege a fraud claim with the particularity required by Fed.R.Civ.P. 9(b).[1]

"It is well settled that Rule 9(b) 'requires specification of the time, place, and content of an alleged false representation, but not the circumstances or evidence from which

---

1. Rule 9(b) provides:
   In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.
   Fed.R.Civ.P. 9(b) (1987).

fraudulent intent could be inferred.'" *Wayne Investment, Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir.1984) (quoting *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 [1st Cir.1980] ); *Leroux v. Lomas & Nettleton Co.*, 626 F.Supp. 962, 968 (D.Mass.1986).

A main purpose of this rule is to provide fair and adequate notice of the plaintiff's claim of fraud and of the acts that form the basis for the claim. *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.1985); *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d at 228–29; *Kaufman v. Magid*, 539 F.Supp. 1088, 1092–93 (D.Mass.1982). In addition to providing notice of the plaintiff's claim, Rule 9(b)

> operates to diminish the possibility that "a plaintiff with a largely groundless claim [will be able] to simply take up the time of a number of other people [by extensive discovery], with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence...."

*Wayne Investment, Inc. v. Gulf Oil Corp.*, 739 F.2d at 13 (quoting *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 [2d Cir.1979] [quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539 [1975]] ). In other words, " '[i]n cases in which *fraud lies at the core of the action*, the rule does not permit a complainant to file suit first, and subsequently to search for a cause of action.'" *Hayduk v. Lanna*, 775 F.2d at 443 (quoting *Lopez v. Bulova Watch Co., Inc.*, 582 F.Supp. 755, 766 [D.R.I.1984] ) (emphasis added in *Hayduk* ).

■ In the present case, the complaint satisfies the "time" and "place" requirements of particularity. Hoffman alleges, "That in or about October, 1982, the defendants entered into an agreement for employment with plaintiff within the Commonwealth of Massachusetts." Complaint, ¶ 6. The complaint also satisfies the "content" requirement of Rule 9(b) in that Hoffman specifically alleges,

> [T]he defendants falsely and fraudulently and with intent to induce plaintiff to

resign his position as an engineer with Polaroid ..., and to enter into a contract of employment with defendant Optima, orally represented to plaintiff that if the plaintiff would come to work with Optima, he would be employed as both Vice President of Engineering and as a full principal of defendant Optima; and that plaintiff would have an eighteen percent (18%) equity ownership interest in defendant Optima.

Complaint, ¶ 6.

Optima and Jack Ekchian argue, in essence, that Hoffman has not articulated any facts beyond the nonperformance of an employment contract, and that such allegations do not pass muster under Rule 9(b). However, "While a mere failure of promised performance normally does not permit a factual finding that the defendant never intended to perform the promised act ..., the trier of fact would surely be permitted to draw such an inference of scienter from the abject failure of performance...." *Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094, 1124 (S.D.N.Y.1982) (citation omitted). In the instant case, fraudulent intent may certainly be inferred from the defendants' promises and subsequent failure to perform.

■ Finally, the defendants argue that the complaint does not set forth sufficient facts stating the time, place and content of the fraudulent inducement with respect to each defendant. As to each defendant, Rule 9(b) requires the plaintiff to allege

(1) the nature of each individual defendant's participation in the fraud, including the facts constituting scienter and an explanation of the defendant's duty toward the plaintiff; (2) whether the defendant is being sued as a primary defendant or as an aider and abettor; and (3) as to allegations on information and belief, a statement of the source of the information and the reasons upon which the belief is founded.

*Natowitz v. Mehlman*, 542 F.Supp. 674, 676 (S.D.N.Y.1982) (quoting *Goldberg v. Meridor*, 81 F.R.D. 105, 111 [S.D.N.Y. 1979] ). Plaintiff's allegations, however, satisfy these requirements of particularity.

Plaintiff alleges that the individual defendants were shareholders and directors of defendant Optima, and they conducted business and acted jointly through defendant Optima. Complaint, ¶ 4. Plaintiff further alleges that "Defendant Optima is now and at all times relevant hereto has been the *alter ego* and agent of the individual defendants...." Complaint, ¶ 3. These allegations give the defendants fair notice of the purported fraudulent conduct and the basis of each defendant's liability for such conduct. Accordingly, the allegations of fraud are sufficient to satisfy the particularity requirements of Rule 9(b), and the motion to dismiss Count I is denied.

**B. The Statute of Frauds**

█ Optima and Jack Ekchian move to dismiss Count II on the grounds that Hoffman's claim seeking to enforce the oral employment agreement is barred by the Massachusetts Statute of Frauds.[2]

In response, Hoffman argues that Optima and the Ekchians are estopped from asserting the defense of the Statute of Frauds because Hoffman reasonably relied on their employment promises.[3] Section 139(1) of the Restatement (Second) of Contracts sets forth those circumstances under which a promise is enforceable notwithstanding the Statute of Frauds:

> A promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce the action of forebearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

Restatement (Second) of Contracts, § 139(1) (1981). In *Cellucci v. Sun Oil Co.*, 2 Mass.App.Ct. 722, 320 N.E.2d 919 (1974), *aff'd*, 368 Mass. 811, 331 N.E.2d 813

(1975), the Appeals Court held that the estoppel doctrine may preclude the affirmative defense of the Statute of Frauds. *Id.* at 727–29, 320 N.E.2d 919. The *Cellucci* court recognized that the elements

> "giving rise to estoppel are 1) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made; 2) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; 3) Detriment to such person as a consequence of the act or omission."

2 Mass.App.Ct. at 728, 320 N.E.2d 919 (quoting *Industrial Bankers of Mass. Inc. v. Reid, Murdoch & Co.*, 297 Mass. 119, 124, 8 N.E.2d 19 [1937]) (citations omitted).

Other courts in Massachusetts have held that the estoppel doctrine either applies or may apply to enforce oral contracts in the context of the Statute of Frauds. *See Hickey v. Green*, 14 Mass.App.Ct. 671, 442 N.E.2d 37 (1982) (holding that the seller of real estate was bound to her oral contract under the equitable estoppel principles of the Restatement [Second] of Contracts § 129, which is similar to § 139[1]); *Goeken v. Kay*, 751 F.2d 469, 472, 474 (1st Cir.1985) (affirming the decision of the district court which assumed for the sake of argument that Massachusetts law allowed recovery on reasonable reliance on an oral contract, notwithstanding the Statute of Frauds); *Palandjian v. Pahlavi*, 614 F.Supp. 1569, 1581–82 (D.Mass.1985) (holding that reasonable reliance on an oral promise precluded a Statute of Frauds defense), *vacated on other grounds*, 782 F.2d 313 (1st Cir.1986).

In the instant case Hoffman alleges that, relying on representations made by both Optima and the Ekchians, he resigned from Polaroid in order to become the Vice Presi-

---

**2.** Mass.Gen.Laws ch. 259, § 1 provides, in relevant part:

> No action shall be brought:
>
> .  .  .  .  .
>
> Upon an agreement that is not to be performed within one year from the making thereof....

**3.** The Court does not consider the issue whether Hoffman's employment contract requires more than one year for its performance, a requirement necessary for the application of the Statute of Frauds.

dent of Engineering at Optima. Such allegations, which are accepted as true for the purpose of this motion, are sufficient to show that Hoffman relied on the promises of Optima and the Ekchians to his detriment. Therefore, the Statute of Frauds does not bar Hoffman's claim for breach of contract as matter of law. Accordingly, the Court denies the motion to dismiss with respect to Count II.

### C. Alter Ego Doctrine

Hoffman alleges that the defendant Optima "has been the *alter ego* and agent of the individual defendants ... [who] have disregarded Optima's corporate entity and used the corporation as their own...." Complaint, ¶ 3. In other words, Hoffman requests this Court to disregard the corporate entity of Optima, and fasten liability on the individual shareholders and officers, the Ekchians. Jack Ekchian requests this Court to dismiss Counts II and III with respect to the individual defendants, the Ekchians, because Hoffman has not alleged sufficient facts to "pierce the corporate veil" of Optima.

Under Massachusetts law, corporations are generally regarded as separate from each other and from the respective shareholders; however, this separate corporate existence may be disregarded "for the defeat of fraud or wrong, or the remedying of injustice." *Hanson v. Bradley*, 298 Mass. 371, 381, 10 N.E.2d 259 (1937). The Supreme Judicial Court set forth the criteria for corporate disregard or "piercing the corporate veil" in the case of *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 233 N.E.2d 748 (1968) (Cutter, J.). In *My Bread Baking Co.*, the court stated:

> [A]dditional facts may be such as to permit the conclusion that an agency or similar relationship exists between the entities. Particularly is this true (a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.

> ... Where there is common control of a group of separate corporations engaged in a single enterprise, failure (a) to make clear which corporation is taking action in a particular situation and the nature and extent of that action, or (b) to observe with care the formal barriers between the corporations with a proper segregation of their separate businesses, records, and finances, may warrant some disregard of the separate entities in rare particular situations in order to prevent gross inequity.

353 Mass. at 619–20, 233 N.E.2d 748 (citation omitted). Moreover, some factors to consider in disregarding the separate existence of the corporation include insufficient capitalization for purposes of the corporate undertaking, nonobservance of corporate formalities, nonpayment of dividends, insolvency of the corporation at the time of the litigated transaction, siphoning of corporate funds by the dominant shareholders, nonfunctioning of officers and directors other than shareholders, absence of corporate records, use of the corporation for transactions of the dominant shareholders, and use of the corporation in promoting fraud. *Pepsi–Cola Metropolitan Bottling Co., Inc. v. Checkers, Inc.*, 754 F.2d 10, 16 (1st Cir.1985).

In the present case, Hoffman alleges 1) the Ekchians disregarded Optima's corporate entity and used the corporation as their own, Complaint, ¶ 3; 2) Optima failed to follow routine corporate formalities in both its internal governance and in the conduct of its business, Complaint, ¶ 3; and, 3) the Ekchians "falsely and fraudulantly ... [induced] plaintiff to resign his position ... with Polaroid Corporation ... and to enter into a contract of employment with Defendant Optima...." Complaint, ¶ 6. These allegations alone are insuffi-

cient to "pierce Optima's corporate veil." Hoffman must show that piercing the corporate veil is necessary to defeat fraud or wrong or to prevent gross inequity. *NCR Credit Corp. v. Underground Camera, Inc.*, 581 F.Supp. 609, 612 (D.Mass.1984); *see My Bread Baking Co.*, 353 Mass. at 620, 233 N.E.2d 748. For example, there is no evidence that Hoffman will be unduly prejudiced should the Court refuse to disregard the corporate form, *see NCR Credit Corp.*, 581 F.Supp. at 613, or that Optima was created to perpetrate a fraud. *See Jurgens v. Abraham*, 616 F.Supp. 1381, 1386 (D.Mass.1985). To allow Hoffman an opportunity to show that this Court's refusal to disregard Optima's corporate form would be grossly inequitable, this Court therefore dismisses without prejudice Counts II and III with respect to the Ekchians.

### D. Mass.Gen.Laws ch. 93A

█ In Count IV of the complaint, Hoffman asserts that Optima and the Ekchians violated Mass.Gen.Laws ch. 93A.[4] However, the Supreme Judicial Court, in *Manning v. Zuckerman*, 388 Mass. 8, 444 N.E.2d 1262 (1983), ruled that Mass.Gen. Laws. ch. 93A, § 11 does not apply to those "[d]isputes arising out of the employment relationship between an employer and an employee." *Id.* at 15, 444 N.E.2d 1262. *See also Weeks v. Harbor National Bank*, 388 Mass. 141, 144, 445 N.E.2d 605 (1983). In *Manning*, the court stated:

**4.** Mass Gen.Laws ch. 93A, § 11 provides, in relevant part:

Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) or section two may, as hereinafter provided, bring an action in the superior court.

. . . . .

Mass.Gen.Laws Ann. ch. 93A, § 11 (West Supp. 1987).

**5.** In the complaint, Hoffman alleges the following:

[T]he statute seeks to deter ... [unfair and deceptive practices] and to reduce the general danger to the public arising from the potential for such unscrupulous behavior in the marketplace. Contract disputes between an employer and an employee, by contrast, are principally "private in nature" and do not occur in the ordinary "conduct of any trade or commerce" as contemplated by the statute.

388 Mass. at 14, 444 N.E.2d 1262 (citations omitted).

In the present case, the dispute between Hoffman and the defendants arises out of an oral employment contract that was negotiated in October, 1982.[5] Although Hoffman argues that he was "a joint venturer entitled to eighteen percent (18%) of the equity of Optima ...," Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss and Motion for Transfer of Venue, at 21, this Court concludes that if the defendant committed any unfair or deceptive act, such acts "necessarily occurred in the context of the parties' employment relationship ..., and not in an arms-length commercial transaction between distinct business entities." *Manning*, 388 Mass. at 11, 444 N.E.2d 1262. Accordingly, the Court grants the defendants' motion to dismiss this particular claim.

### E. Corporate Mismanagement

In Count V of the complaint, Hoffman alleges, "As a result of the defendants' negligence in the management of Optima

1) "[I]n or about October, 1982, the defendants entered into an agreement for employment with plaintiff...." Complaint, ¶ 6; 2) "[P]laintiff ... agreed with defendants to render the services requested of him in exchange for the position of Vice President of Engineering of defendant Optima and an eighteen percent (18%) equity ownership interest in that company...." Complaint, ¶ 7; 3) "[D]uring this period, plaintiff ... was responsible for the design and management of the defendant Optima's products.... During the period in question, plaintiff was also the principal inventor of patents of significant value which he assigned to defendant Optima...." Complaint, ¶ 8.

..., the plaintiff suffered financial loss and damage...." Complaint, ¶ 20. Jack Ekchian moves to dismiss this claim because Hoffman lacks standing to bring this cause of action.

■ Massachusetts law requires that a court look to the law of the state of incorporation to determine the corporation's liability to its stockholders or creditors. *Beacon Wool Corp. v. Johnson*, 331 Mass. 274, 279, 119 N.E.2d 195 (1954). *See Massaro v. Vernitron Corp.*, 559 F.Supp. 1068, 1080 (D.Mass.1983). Therefore, because Optima is a California corporation, any claims of corporate negligence or breach of fiduciary duty of the corporate officers and directors must be analyzed under California corporate law.

■ Under California law, a stockholder has no personal or individual right of action against the corporation's officers and directors for a wrong or injury to the corporation which results in the destruction or depreciation of the value of his stock, because the wrong thus suffered by the stockholder is merely incidental to the wrong suffered by the corporation and affects all stockholders alike. *Shaw v. Empire Savings and Loan Association*, 186 Cal.App.2d 401, 407, 9 Cal.Rptr. 204, 208 (1960). The stockholder's right to sue the officers and directors of the corporation for redress is derivative, not primary, since any recovery must go to the corporation for the benefit of all stockholders. *Starbird v. Lane*, 203 Cal.App.2d 247, 254–55, 21 Cal.Rptr. 280, 284 (1962). The action being derivative in nature, the stockholder cannot maintain such action other than in a representative capacity for and on behalf of the corporation. *Campbell v. Clark*, 159 Cal.App.2d 432, 324 P.2d 51, 53 (1958).

In the instant case, Hoffman's cause of action—corporate mismanagement and breach of fiduciary duty—is a corporate cause of action belonging to Optima. Hoffman has not brought this action in a representative capacity or on behalf of Optima. Accordingly, Hoffman lacks standing to sue for corporate mismanagement, and the Court grants the motion to dismiss with respect to Count V.

### F. Intentional Infliction of Emotional Distress

■ In Count VI of the complaint, Hoffman asserts a cause of action for the intentional infliction of emotional distress. In order to prevail on this claim, a plaintiff must establish:

(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community;" (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress ... was "severe" and of a nature "that no reasonable man could be expected to endure it."

*Agis v. Howard Johnson Company*, 371 Mass. 140, 144–45, 355 N.E.2d 315 (1976) (citations omitted). Hurt feelings resulting from bad manners or minor annoyances do not justify recovery for intentional infliction of emotional distress. *Id.* at 145, 355 N.E.2d 315. In *Agis*, the Supreme Judicial Court instructed that " 'the door to recovery should be opened but narrowly and with due caution.' " *Id.* at 144, 355 N.E.2d 315 (quoting *Barnett v. Collection Serv. Co.*, 214 Iowa 1303, 1312, 242 N.W. 25 [1932]).

The issue, therefore, is whether the conduct of Optima and the Ekchians alleged in the complaint may reasonably be viewed as "extreme and outrageous," "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." The Court holds that such conduct is legally insufficient to warrant liability for intentional infliction of emotional distress.

Taking as true the following factual allegations—1) the defendants fraudulently induced the plaintiff to resign his position with Polaroid and enter into a contract of employment with Optima as an eighteen percent equity owner; 2) the defendants paid Hoffman only a fraction of the fair market value of his services; and 3) the plaintiff was not reimbursed for $7,500 of

his own funds used to purchase equipment and materials for Optima's use and benefit —this Court cannot reasonably view such conduct as "extreme and outrageous" and "beyond all possible bounds of decency." [6] *See Redgrave v. Boston Symphony Orchestra, Inc.,* 557 F.Supp. 230, 236 (D.Mass.1983). The disappointment Hoffman suffered during his employment at Optima is legally insufficient for a claim of intentional infliction of emotional distress. Therefore, the Court grants the defendants' motion to dismiss with respect to this particular claim.

### III. MOTION FOR CHANGE OF VENUE

■ The defendants also move this Court, pursuant to 28 U.S.C. § 1404(a), to transfer the venue to the appropriate United States District Court in California.[7] Given that (1) the cause of action arose in Massachusetts, and at all relevant times Hoffman was employed by Optima in Massachusetts; (2) the principal place of business of defendant Optima is in Burlington, Massachusetts; (3) defendant Jack Ekchian is a resident of Massachusetts; and (4) other possible witnesses who were employed by Optima reside in Massachusetts, transfer of this case to California is inappropriate. *Cf. Berrigan v. Greyhound Lines, Inc.,* 560 F.Supp. 165, 169 (D.Mass. 1982) (holding that, despite the fact that the cause of action arose in Arizona, the case should not be transferred from Massachusetts to Arizona where the four named plaintiffs lived in Massachusetts and where Arizona is less convenient for the plaintiff class than Massachusetts was to the defendants). Accordingly, the motion to transfer venue is denied.

---

**6.** In fact, Hoffman was employed by Optima for three years and seven months. It is quite puzzling to the Court that Hoffman claims that the alleged conduct was "utterly intolerable in a civilized community" despite the fact that he seems to have tolerated it for over three and one-half years.

**7.** Section 1404(a) states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a) (West 1976).